No. 13224

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

BIG SKY LIVESTOCK, INC.,
A Montana Corporation,

Plaintiff and Respondent,

-vs-

E. A. HERZOG,

Defendant and Appellant.

---

Appeal from: District Court of the Seventeenth Judicial District,
Honorable Thomas Dignan, Judge presiding.

Counsel of Record:

For Appellant:

Johnson and Foster, Lewistown, Montana
Robert L. Johnson argued, Lewistown, Montana

For Respondent:

Gallagher and Archambeault, Glasgow, Montana
Francis Gallagher argued and Matthew W. Knierim
argued, Glasgow, Montana

---

Submitted: October 12, 1976

Decided: DEC 27 1976

Filed: DEC 27 1976

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal by defendant E. A. Herzog is from a judgment on a jury verdict in the district court, Valley County, in an action on an account stated for veterinary drugs used to treat cattle. Judgment for plaintiff Big Sky Livestock, Inc. was in the amount of $13,500. Herzog appeals.

Four issues are raised:

(1) Whether the court erred in granting attorney fees to plaintiff without supporting evidence and notice to defendant?

(2) Did the court err in awarding 10% per annum interest to plaintiff?

(3) Did plaintiff falsify evidence of account stated?

(4) Did the court err in striking from the record and commenting to the jury upon defendant's proof that plaintiff fed poisonous hay to defendant's cattle?

On December 17, 1973 Big Sky and Herzog entered into a written contract to feed cattle belonging to Herzog. These cattle from the north central part of Montana were purchased for Herzog by Ted Miller, a cattle buyer from Lewistown, Montana. The purchase, consisting of steer and heifer calves, was made in late December 1973, and early January 1974. During the period these cattle were being transported to Glasgow where the feed lot was located, the temperatures were extremely cold and some of the cattle needed medical treatment after they arrived. According to the terms of their contract Herzog was to pay Big Sky 36¢ per pound of gain and Herzog agreed to pay "for all drugs, veterinary services and supplies, and those items will be billed to owner

- 2 -

[Herzog] at cost."

The contract further stated that Big Sky agreed to "feed, water, provide health care, provide labor and to otherwise care for the herd in a good and husbandlike manner at Feeder's premises" near Glasgow and to "vaccinate and brand livestock with vaccine and brands required by" Herzog and Big Sky.

From the time of arrival of the cattle Herzog received itemized statements showing veterinary charges, veterinary drug charges and vaccination charges. On March 5, 1974, he made a $60,000 payment to Big Sky and on April 15, 1974 he made a further payment of $25,000 for services rendered under the contract.

On May 1, Herzog went to Glasgow to remove the cattle from the feed lot. At that time the cattle were weighed so the gain could be determined. He testified he was satisfied with the weight the cattled had gained during the months they were in Big Sky's care. At that time Herzog gave Big Sky a check in the amount of $35,790.24, the check reciting the gain portion was for $22,789.40 and the drug portion of $13,000.84. Both parties testified there was some discussion about the amount of the drug charges. Herzog tried to get the charges reduced without success. Several days after the cattle had been shipped Herzog stopped payment on the check alleging something was wrong with the drug charges. He then sent Big Sky a new check for the full amount of the weight gain, plus interest from May 1st. Thereafter Big Sky filed suit for the difference in the two checks.

The question presented is what constitutes "at cost", when applied to the drugs. Dr. Martin R. Connell was president and manager of Big Sky Livestock, Inc. In addition, he is the sole owner of the Glasgow Veterinary Clinic and held 90% of the stock

in the Glasgow Veterinary Supply, a Montana corporation. Dr. Connell testified in connection with his feeding operations at Big Sky, that all drugs were purchased by Big Sky from the Veterinary Clinic, not from Glasgow Veterinary Supply and the prices were at suggested manfacturers' retail. He further testified the Veterinary Clinic made a profit on all drugs sold by it to Big Sky, Inc.; not only on Herzog's cattle but on all cattle that went through the feeding operations of Big Sky, Inc.

Herzog was treated no better or worse than any other user of the facilities. Dr. Connell testified the average markup in the drugs and supplies used was about 25% and if discounted the closest figure they could get from going over the books was that the drug bill came to $9,846.06. There were additional costs for branding, sorting, dehorning and for processing that brought the cost up to the $13,000 figure. During the life of the contract Herzog received statements from Big Sky on all services rendered under the contract including all drug charges, and the only time Herzog objected to the drug charges was at the time of settling up on May 1st.

Issue (1) is directed at the $3,000 attorney fee granted by the district court. Herzog argues this was done without notice to him and without his being present. He further alleged he was entitled to notice of proceedings on the issue of attorney fees under section 93-8505, R.C.M. 1947. However, Herzog in his amended answer claimed attorney fees in the amount of $3,000 and both parties stipulated to the court that upon completion of the case the court would determine the reasonable value of fees to be awarded.

- 4 -

The court noticed such a hearing and made a minute entry after hearing Big Sky's evidence as to the hours worked, Herzog did not appear although his counsel had been notified. The court noted that no opposing evidence was heard. Herzog did not oppose this item until he was heard on post-trial motions. This Court in State v. North American Car Corp., 118 Mont. 183, 164 P.2d 161 (and cases cited therein) held that when a case is tried and submitted on agreed facts, the court is bound by the stipulation. Here, throughout the trial Herzog's position was consistent with the stipulation that fees would be awarded the prevailing party. We find no error in the award of attorney fees.

Issue (2) concerns the court's instruction to the jury awarding 10% per annum from May 1, 1974. We find the trial court erred. Big Sky in its brief, and at the time of arguing the case, admitted the interest rate is governed by statute, section 47-124, R.C.M. 1947, which provides for interest at 6% per annum on an account stated from the date ascertained. See 5 Am Jur 2d, Appeal and Error § 941; 65 ALR2d 1341,§4[b]; Norum v. Ohio Oil Company, 83 Mont. 353, 272 P. 534.

On Issue (3) Herzog argues there was no account created in this case, citing Blanck v. Pioneer Mining Co., 93 Wash.26, 159 P. 1077; Halverson v. Blue Mountain Prune Growers Co-op, 188 Ore. 661, 214 P.2d 986. These cases hold that if the account rendered by the creditor is specifically at variance with the underlying contract, the mere retention of the erroneous account by the debtor does not give rise to an account stated. However, that is not the situation here. Here, the parties dealt face-to-face and discussed the charges in settling up the account; agreement was reached and Herzog paid the final figure with his check. This Court

held in Holmes v. Potts, 132 Mont. 477, 319 P.2d 232, that an "account stated" is a final adjustment of demands and amounts due.

In creating an account stated, the minds of all parties thereto must meet and understand that a final adjustment of each upon the other is being made. Nelson v. Montana Iron Mining Co., 140 Mont. 331, 371 P.2d 874.

These rules must be applied as of the time of the final transaction between the parties and without reference to any later change of mind. As of May 1, Herzog gave his check for the full amount owing, and in the absence of fraud, mistake or duress, the giving of the check without any reservations created an account stated. The record is clear the parties at the time of discussion and final settlement, culminating in the payment of $35,790.24, were aware they were then determining, fixing and settling the amount due with a view of final adjustment and determination. There was, on the basis of these undisputed facts, positive evidence of an account stated clearly. One who freely pays an account, even though he has expressed dissatisfaction with it, does so with the intent to assent to it and with awareness that it is a final determination of all accounts.

All Herzog's allegations of "falsification" of the account were presented to the jury and it found against him. On appeal the role of this Court is to limit its review to whether there is substantial credible evidence to support the verdict. In so doing, we review the evidence in a light most favorable to the prevailing party in the trial court. Bos v. Dolajak, 167 Mont. 1, 534 P.2d 1258, 32 St.Rep. 438, 445.

Issue (4) is directed at the trial court's striking from the record Herzog's alleged proof that Big Sky fed poisonous hay

to his cattle.  We find no error due to the fact Herzog failed
to lay a proper foundation indicating any relationship in the hay
fed to his cattle and the health problems that may have necessitated
veterinary care or to the administration of drugs.  In truth, the
evidence given by Herzog was that the cattle were "thrifty"
upon leaving the feed lot.  Too, his death loss in these cattle was
considered "very good".  The case was tried to the jury on the
theory of an account stated.  None of the offered evidence dealing
with the hay related to the question of fraud, mistake or any
other evidence available to Herzog in an account stated case.

In its ruling the trial court was performing its proper
function in determining the admissibility or nonadmissibility
of evidence.  The reasons for so ruling were stated and we find
no bias toward either party.

The judgment of the district court is affirmed except
as to the award of interest at 10% per annum.  The cause is remanded
to the trial court with directions to modify the judgment to
provide interest at the rate of 6% per annum from date of such
judgment.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

_____
Hon. LeRoy L. McKinnon, District
Judge, sitting for Justice Wesley
Castles.

No. 13224

Big Sky Livestock v. Herzog

    I respectfully dissent from the foregoing opinion. By reason of the press of other matters, and the fact that I do not have copies of the transcript on appeal available, my dissenting opinion will be brief and general.

    As to attorney fees, at best there was a misunderstanding which resulted in the plaintiff's attorney having a hearing with the Court out of the presence of defendant's attorney. Inasmuch as a separate hearing was held, fundamental fairness would require that both attorneys have the opportunity to be present.

    As to an account stated, it appears that several of the services contracted to be performed under the thirty-six cents per pound of gain, were included again in the alleged account stated. At best this would amount to a mistake of fact sufficient to vitiate any attempted account stated.

    As to the issuance of poisonous hay, it appears to this writer that the defendant was prevented from laying a foundation for any evidence on the issue.

    For the foregoing reasons, I would reverse and remand for a new trial.

<br>

District Judge
Sitting in place of
Mr. Justice Wesley Castles.