No. 14667

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

ROCK SPRINGS CORPORATION, and
LAWRENCE McCUNE,

                    Plaintiffs and Respondents,

        vs.

W. H. PIERRE, d/b/a W.H. PIERRE &
ASSOCIATES, LTS., and L.B.M.
CONSTRUCTION, INC.,

                    Defendants and Third Party Plaintiffs
                    and Appellants.

---

Appeal from:  District Court of the Fifth Judicial District,
              Hon. Robert J. Boyd, Judge presiding.

Counsel of Record:

    For Appellants:

        Richard J. Llewellyn argued, Helena, Montana

    For Respondents:

        R. Thomas Garrison argued, Virginia City, Montana

---

                            Submitted:  May 23, 1980

                              Decided:

Filed:  AUG 11 1980

_____
                            Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Rock Springs Corporation (Rock Springs) and Lawrence McCune, not parties in this appeal, brought this action in the Fifth Judicial District for conversion of mine tailings in Madison County, Montana. Defendants-appellants, W. H. Pierre d/b/a W. H. Pierre & Associates and L.B.M. Construction (Pierre and L.B.M.), filed a third party complaint against Camilla Gage, respondent herein, seeking to hold her liable based on her claims of ownership. The jury returned a verdict in favor of Rock Springs and McCune and against Pierre and L.B.M., and further found in favor of Gage in the third party action. Pierre and L.B.M. now appeal solely from the verdict in the third party action.

In the Rochester Basin, west of Twin Bridges, Montana, there are tailings from the Watseca mine which are located on the "Concentrator Tailings Placer Unpatented Mining Claim." The competing claims of ownership of the tailings gave rise to the District Court action. The mining claim had been located on federal land in 1934 by William Gage and relocated by his wife, Camilla Gage, in 1941 following his death. The tailings resulted from the processing of materials from the Watseca Mine and other claims located approximately one mile north of Camilla Gage's claim. The mill, known as the Clark Concentrator, processed the minerals and deposited the tailings upon what is now Mrs. Gage's claim between the late 1860's and 1898.

Lawrence McCune is the successor in interest to the Watseca Mine and other claims near it which will be referred to cumulatively as the "Watseca." Tailings are also located on McCune's "Concentrator Quartz Lode Mining Claim." These tailings will be referred to as the "upper tailings" while

the tailings located on Mrs. Gage's claim will be called the "lower tailings."

Third party plaintiff-appellant W. H. Pierre met third party defendant-respondent Camilla Gage in 1967 while he was attending the School of Mines in Butte. Mrs. Gage was and presently is a real estate broker in Twin Bridges. Pierre was very interested in testing both the lower tailings and the upper tailings in 1967, and he contacted both Mrs. Gage and Lawrence McCune. Mrs. Gage authorized Pierre to test the lower tailings, and McCune authorized him to test the upper tailings during a limited time period which ended in December 1967. Pierre's tests came out negative; the cost of removing, hauling and processing the material would exceed any revenues to be derived from the minerals.

In 1969 the predecessor in interest to Rock Springs acquired a lease and option to the Watseca claims from Lawrence McCune.

Between 1968 and 1972, Pierre worked in various capacities in the United States and Canada. In 1972 he once again contacted Mrs. Gage concerning the lower tailings. Pierre had discovered a method which would make the extraction of the minerals profitable. The method involved the transporting of the tailings to Butte where they would be mixed with silica. When silica was added in sufficient quantity, free smelting could be obtained which resulted in the extraction of the minerals in the tailings with only the incurrence of costs for transportation and the silica itself. The cost of shipping the tailings to the smelter was approximately $6.50 per ton, while the cost of silica was $.10 per ton.

Mrs. Gage represented that she owned the tailings as a result of her claim. She continued to assert this ownership through trial. Pierre testified that he never questioned her ownership. In late 1972 or early 1973 Mrs. Gage and L.B.M. Construction, Inc., a company comprised of Pierre and two others, entered into an oral agreement for the removal of the lower tailings. A written agreement was entered into in May 1973. It recited that Mrs. Gage was to receive $.50 per ton of tailings removed. It was anticipated that there were 15,000 tons of tailings.

In 1973 Pierre began extracting the tailings and transporting them for smelting. Expert testimony revealed that 3539 cubic yards of tailings were removed. Also, according to expert testimony, the amount of gold and silver removed was estimated to be 694.4 troy ounces of gold and 4539 troy ounces of silver. The highest value of gold between the time of extraction in 1973 and the initiation of this suit was $195.25 per troy ounce on December 30, 1974, while the highest price for silver was $6.06 in May 1974. According to this expert testimony the gross value of the minerals taken at the highest price was $163,087.

Further evidence was introduced revealing the disbursements made by the Anaconda Company. This information, supplied by Anaconda, shows that for the months of February through June, 1973, Anaconda paid Pierre approximately $70,000 for the minerals processed at the smelter. This figure is the net disbursement after the cost of the silica was deducted. Pierre also made shipments to Anaconda in July through October, 1973; however, Anaconda did not supply the amount disbursed for this period. Mrs. Gage received $3,000 from L.B.M. for the removal of the tailings.

Also introduced at trial were two reports prepared by mining engineers in the 1930's. The reports were prepared by Uuno Sahinen and William S. Gage, Camilla Gage's deceased husband, and they disclose the quality and quantity of the tailings in question. The reports disclosed that the lower tailings belonged to the Watseca mining operation. Pierre testified that he had read the reports and was familiar with them.

Testimony was also adduced concerning Pierre's degree in mining engineering and his extensive experience in mining. His experience in mining dates back to 1958, and he received his degree from the School of Mines in 1968.

Several exhibits of correspondence between Pierre, McCune, Rock Springs Corporation, and Camilla Gage were introduced into evidence. These exhibits reflect, to a certain extent, the knowledge of the parties concerning the ownership of the claims. This correspondence is summarized as follows:

September 25, 1967 Letter--McCune to Pierre. McCune referred to a telephone conversation with Pierre in which Pierre sought authorization to test mine tailings in the Rochester Basin. McCune gave Pierre permission "to sample and test the Watseca Mine tailings and the Concentrator tailings . . . subject to the following: . . . You will agree to work at least one-half of the approximately 46,000 tons of tailings, in the event a working contract is entered into . . ." (This reference to 46,000 tons is derived from the Sahinen Report which states that the two tailings dumps in the area contain the following quantity of tonnage: "Watseca tailings" (upper tailings)--31,000 tons, and "Concentrator tailings" (lower tailings)--15,000 tons.)

October 30, 1972 Letter--Pierre to McCune. Pierre attempted to secure an option on the Watseca property. He gave a brief history of his prior dealings and testings in the area and his prior contract with Camilla Gage. Pierre stated that he was currently "shipping tailings from another mine in the same general area as the Wasecca [sic] and would like to re-option the Wasecca [sic]."

November 2, 1972 Letter--McCune to Pierre. McCune informed Pierre that Camilla Gage at no time had "authority to option my Watseca property", and that any action to lease the property was precluded at this time as a result of an existing lease.

January 2, 1973 Letter--Pierre to Rock Springs Corporation. Pierre referred to the receipt of a letter from Mr. McLean, the president of Rock Springs. Unfortunately, the letter written by McLean was not introduced as an exhibit. Pierre in the January 2 letter stated, "I greatly appreciated receiving your letter as Mrs. Gage led me to believe conditions were quite the contrary." The letter's purpose was to again obtain an option to the Watseca.

January 30, 1973 Letter--Pierre to McCune. This letter also sought an option on the Watseca property and contained the following statement: "Unfortunately I was misled by Mrs. Camillia [sic] Gage of Twin Bridges, Montana as to the ownership."

May 25, 1973 Agreement to Purchase Mining Tailings. This agreement was executed between Pierre and Gage. It purported to sell mine tailings known as "The Concentrator Tailings" for $7,500 payable at a rate of $.50 per ton.

September 17, 1975 Letter--Gage to Pierre. Camilla Gage stated that she believed this lawsuit to be "perfectly

ridiculous", that she still felt that she owned the tailings, and that "we both acted in good faith when you hauled the tailings to the smelter."

The following jury instructions were given by the District Court. Instruction No. 19 was given without objection, and Instruction No. 20 was given over appellant's objection.

Instruction No. 19:

"You are instructed that if you find in favor of the plaintiffs, and that Camilla Gage represented to William H. Pierre or other officers of L.B.M. Construction Co. that she was the owner of the lower tailings on Rochester Creek, and if you further find that William H. Pierre and L.B.M. Construction Co. relied on the representations of ownership made by Camilla Gage, to their detriment, then William H. Pierre and L.B.M. Construction Co. are entitled to recover from Camilla Gage the amount they are required to pay to the plaintiffs."

Instruction No. 20:

"If you find that the Defendants, W.H. PIERRE, doing business as W. H. PIERRE & ASSOCIATES, LTD.,; L B M Construction, entered into a contract with the Third Party Defendant, CAMILLA GAGE whereby W. H. PIERRE, doing business as W. H. PIERRE & ASSOCIATES or the L B M Construction Company purchased from CAMILLA GAGE mill tailings situate and located on the Concentrator Tailings Unpatented Placer Claim on which the Plaintiffs cause of action is based and held, used or converted the mine tailings under such contract, knowing the property belonged to the Plaintiffs, LAWRENCE McCUNE and ROCK SPRINGS CORPORATION, then the Defendant, W. H. PIERRE, doing business as W. H. PIERRE & ASSOCIATES and the Defendant, L B M Construction Company is estopped from denying that the Plaintiffs had title to the mine tailings or the right to retain ownership of the tailings, and you will find in favor of the Third Party Defendant, CAMILLA GAGE."

The jury returned a verdict in favor of the plaintiffs, Rock Springs and McCune, and against Pierre and L.B.M., in the amount of $76,382.31, which included $53,818.71 for conversion of the tailings and $22,563.60 for the time and

-7-

expense involved in pursuit of the converted property. The jury also found against the third party plaintiffs, L.B.M. and Pierre, and in favor of third party defendant, Camilla Gage.

Appellant raises two issues for this Court to consider:

1. Is the District Court's jury Instruction No. 20 supported by the evidence?

2. Was there sufficient evidence to support the jury's verdict in favor of the third party defendant, Camilla Gage?

The issues raised on appeal are coextensive in that they both challenge the lower court's conclusion that appellant Pierre knew of McCune's interest in the tailings. This Court has examined the record below and concludes that there was sufficient evidence to support both the instruction and the jury verdict.

We find two things particularly revealing in reaching our conclusion. First, the correspondence admitted into evidence at trial indicates that in 1967 Pierre received McCune's permission to "sample and test the Watseca Mine tailings and the Concentrator tailings." From this the jury could properly infer that Pierre had knowledge of McCune's claimed interest in the lower tailings. This is reinforced by the letter's reference to 46,000 tons of tailings, a number arrived at from the 31,000 ton (upper tailings) and 15,000 ton (lower tailings) figures cited in the Sahinen Report with which Pierre admitted he was familiar. We consider this persuasive evidence of Pierre's notice of McCune claimed interest in the Concentrator tailings.

Appellant argues that Mrs. Gage represented to him that she owned the tailings on the Concentrator claim and that he relied on those representations. However, an examination of

-8-

other correspondence admitted at trial does not prove his argument. It does, in fact, lay a foundation for the introduction of Instruction No. 20 and the ultimate verdict.

In that correspondence Pierre stated: "I greatly appreciated receiving your letter as Mrs. Gage led me to believe conditions were quite the contrary" (letter to Thomas McLean, January 2, 1973); "Unfortunately I was misled by Mrs. Camillia [sic] Gage of Twin Bridges, Montana as to the ownership" (letter to L. McCune, January 30, 1973). Even assuming that Pierre, supposedly well acquainted with the area and the individuals involved, was confused or mistaken in this correspondence as to what was the Watseca claim and what were the Watseca tailings, we can presume that at some point he doubted Mrs. Gage's veracity and ceased to rely on her statements as fact.

Secondly, the record discloses that Pierre had been interested in the Rochester Basin since 1967. It further discloses that he was acquainted with the contents of the mining reports made by Uuno Sahinen and William Gage around 1939. The Sahinen Report quantified the Watseca tailings explicitly and cited figures representing the Watseca tailings which could only be arrived at by including the tonnage in both the upper tailings and the lower tailings. The Gage Report is particularly enlightening, as Gage reports that the two tailings dumps in the basin were on Watseca Mining Co. property. Since the company and McCune have identical interests, there is evidence that Pierre was at least partially aware of the extent of Watseca ownership. Based on the evidence introduced at trial and considering Pierre's expertise, we find sufficient evidence to support the trial court's decision to give Instruction No. 20.

Appellant further asserts that the two instructions set out above contain conflicting legal principles. We disagree. The body of this appeal centers around elements of "knowledge" and "reliance." Instruction No. 19, to which there was no objection, deals specifically with knowledge and reliance. Although Instruction No. 20 includes references to other legal theories, the question it ultimately asks the jury is, "did Pierre have knowledge of McCune's interests?" Obviously, if the jury found he did have knowledge, there could be no good faith reliance. Therefore, the instructions were not inconsistent.

When determining whether jury instructions are properly given or refused, this Court considers the instructions given in their entirety and review them in light of the evidence adduced. Brothers v. Town of Virginia City (1976), 171 Mont. 352, 558 P.2d 464. This Court has ruled that where the jury instructions, taken as a whole, state the law applicable to the case, a party cannot claim reversible error as to the giving of certain instructions. Frank v. Hudson (1962), 140 Mont. 480, 373 P.2d 951; Brothers v. Town of Virginia City, supra. We conclude that the instructions given, including Instruction No. 20, were supported by sufficient evidence. It was not error for the trial court to submit both Instruction Nos. 19 and 20 to the jury for consideration.

As to the sufficiency of the evidence to support the verdict, we are guided by well-settled legal principles. We are mindful that the jury is in the best position to weigh the evidence and consider the credibility of witnesses. Thus, in examining the sufficiency of the evidence, we undertake our review in a light most favorable to the pre-

vailing party, and we presume the findings and judgment of the District Court are correct. Lumby v. Doetch (1979), ___ Mont. ____, 600 P.2d 200, 202, 36 St.Rep. 1684, 1687, citing Hellickson v. Barrett Mobile Home Transport, Inc. (1973), 161 Mont. 455, 459, 507 P.2d 523, 525. Further, we will not substitute our view of the evidence for that of the jury. When the evidence furnishes reasonable grounds for different conclusions, the findings of the jury will not be disturbed. Adami v. Murphy (1945), 118 Mont. 172, 179, 164 P.2d 150.

Directed by these principles we affirm the jury verdict. As discussed above, the jury could properly infer from the correspondence between the parties, the 1967 business dealings and Pierre's familiarity with the Gage and Sahinen Reports that appellant had notice of the McCune interests and, therefore, did not rely on Mrs. Gage's claims. The record supports the instruction, the verdict and the judgment.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices