No. 88-433

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

DALE E. GUENTHER and DORIS H.
GUENTHER,

Plaintiffs and Appellants,

-vs-

DONALD L. FINLEY and PAULINE E.
FINLEY,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hedman, Hileman & Lacosta; Donald E. Hedman, Whitefish,
Montana

For Respondent:

Gary R. Christiansen, Kalispell, Montana

Submitted on Briefs:  Feb. 9, 1989

Decided:  March 14, 1989

Filed:

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

The decision of the District Court of the Eleventh Judicial District was appealed by the plaintiffs Guenther from the jury verdict in favor of the defendants Finley denying the plaintiffs' claim for trespass and damages. The Guenthers claim that the defendants' dam caused water to back onto the property of the plaintiffs for a number of years, causing extensive damage to the land and destroying the habitability of plaintiffs' home.

The issue is whether substantial credible evidence exists to support the jury verdict rendered in this case.

Plaintiffs bought .75 acre in 1962. Defendants purchased their property south of the plaintiffs' property in July 1980. The two properties are adjacent to each other and divided by Elk Park Road, a Flathead County Road. Mooring Creek runs north to south through both properties. The county maintains a culvert which runs under the county road.

Baltrusch, an owner prior to the defendants Finley, constructed a dam on the property now owned by the defendants. The dam causes the water from Mooring Creek to back up onto defendants' property.

Plaintiffs allege that the dam has caused the water to back onto their property upstream, causing a trespass. According to Guenthers, prior to the time that the dam was built on the Finleys' property, the land owned by the Guenthers was appraised at $40,000 to $50,000 and was "the prettiest little place I ever saw." Subsequently, though, the dam has caused flooding of the appellants' land, creating swamp-like conditions and making the land and house completely uninhabitable. Some of the problems allegedly caused by the flooding are cattails that are out of control, problems

2

with spiders and worms and mosquitoes, damage to the house from the proximity of the water, and a sewer-like smell.

Appellants contend that flooding occurred on their property in 1979, 1980, 1984, 1985, and 1986. In 1979 when the flooding occurred, Guenthers called the county complaining that the culvert was plugged with shale rock. The county cleaned out the culvert. In 1980, Guenther alleged that he called the owner of the property now owned by defendants, Baltrusch, to complain and the water problem thereafter disappeared. Appellants assumed that Baltrusch took some remedial action but did not follow up on their complaint and so do not really know.

In three of the next six years, appellants claim there was a flooding problem; however, they never went to the Finleys to speak with them. In 1985, the renter of the Guenther property had a problem with flooding and called the county to have the problem remedied. Not until April 8, 1986, did the Guenthers go directly to the Finleys, believing that the dam which had been in existence since 1980 could have been the cause of the flooding. At that time, Dale Guenther did not go to see defendants to discuss the issue but was found on the Finleys' property by Donald Finley looking at the area near Elk Park Road. Upon confronting Guenther and his attorney, defendant was asked if the Finleys would buy the Guenthers' property. Prior to this there had been no indication that the spring flooding of Guenthers' property was caused by the dam on the property owned by Finleys.

The dam, which was constructed in 1980, was not altered after the initial construction by Baltrusch. Nor were any changes or additions made by the Finleys.

The issue with which this Court is faced is whether there was substantial credible evidence from which the jury

3

could make a proper determination in this case. We hold that there was such substantial credible evidence.

There is some dispute as to what role the culvert played in the flooding of appellants' property. The culvert is built off the ground. Respondents' expert testified that the height of water on appellants' land would have to reach a depth of 1.25 feet before it reached the bottom of the culvert allowing the water to drain. The culvert is eighteen inches in diameter. During the winter and spring the culvert easily dams with mud, muck, ice, gravel, shale, and silt. When the expert for the respondents observed the culvert, it was plugged to ten inches of the eighteen. In this respect, according to respondents, the culvert itself acts as a dam. Any water on the Guenthers' property would have to reach the height of over 1.25 feet before it would drain from the property downstream to the Finleys' property. Furthermore, the water level on the appellants' property was .11 feet higher than on the respondents' property when measurements were taken in 1986, making flooding of appellants' property from respondents' dam unlikely.

Appellants, on the other hand, contend that there is a difference of 2.45 feet between the top of the dam's spillway and the bottom of the culvert. Naturally, therefore, any time that the water reaches the spillway, water will flood the appellants' land by way of the culvert. In past years water has reached the spillway. Also, because the law of physics demands that "water seeks its own level," the level of water on the Finleys' property and the level of the water on the Guenthers' property must be the same height. Therefore, any time that the water is dammed on the Finley property, raising the natural water level, the water is the same height on the Guenther property and the water is trapped on the Guenther property, creating a trespass.

4

The facts set forth by appellants, in their view, clearly show evidence of a trespass and damages. Restatement (Second) of Torts, § 158, properly sets out the elements of the tort of intentional trespass to real property:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove.

We adopted Restatement § 158 in Branstetter v. Beaumont Supper Club, Inc. (Mont. 1986), 727 P.2d 933, 43 St.Rep. 1981, relying also on the Restatement's definition of "intent" "to denote that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Branstetter, 727 P.2d at 935, 43 St.Rep. at 1983-1984, quoting Restatement (Second) of Torts, § 8A.

Because the dam was built before the Finleys purchased their property, it is clear that they did not intentionally cause any water to enter Guenthers' land. Furthermore, the jury found that after reviewing the conflicting evidence, the Finleys were not liable for intentional trespass. Assuming arguendo that respondents caused the flooding of appellants' land, there is still no showing that they recklessly or negligently caused the consequences which resulted in the flooding.

Restatement (Second) of Torts, § 165, states:

> One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to

5

> liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest.

The jury instruction adopted by the District Court was as follows:

> You are instructed that a person may be subject to liability for trespass if he enters land in the possession of the other, or causes a thing, such as water, to do so or fails to remove from the land a thing, such as water, which he is under a duty to remove.
>
> If you find that Defendants' trespassed on Plaintiffs' land then you must determine what damages, if any, have been sustained and award them an amount which will reasonably compensate them in accordance with these instructions.

The foregoing instructions clearly discussed the Restatement application of reckless or negligent trespass.

After reviewing the evidence presented before them, the jury found that there had been no trespass by the respondents and that consequently there were no damages. Upon motion by the appellants for a judgment NOV, the District Court denied the motion, relying on the findings of the jury.

While there may be some question whether the flooding of appellants' land was caused by respondents, it is within the province of the jury to decide in whose favor the evidence lies. In the order of the District Court denying the motion for judgment NOV, Judge Erickson stated that the court was satisfied that the dam on the respondents' property had the <u>potential</u> for flooding the appellants' property if filled to the level of the spillway. However, the factfinder found

that there was no trespass here. Moreover, there was evidence that the prior flooding of appellants' property <u>may have</u> occurred from the existence of blockage in the culvert. The jury decided that from the evidence offered they were not convinced that the existence of respondents' dam caused any damage to appellants.

In reviewing the judgment of the trier of fact, the standard of review is:

> where a fact issue or issues are presented before either a court sitting alone, or with a jury, and there is substantial evidence to support the findings of the court or the jury verdict, such findings or verdict are conclusive on appeal.

Johnson v. St. Patrick's Hospital (1968), 152 Mont. 300, 307, 448 P.2d 729, 732-733; Matter of Estate of Holm (1979), 179 Mont. 375, 588 P.2d 531; Big Sky Livestock, Inc. v. Herzog (1976), 171 Mont. 409, 558 P.2d 1107. There is substantial evidence here to support the jury verdict.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices

7