No. **91-216**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1993**

PATRICIA WISHER,

      Plaintiff and Appellant,

  and

WILSON A. HIGGS and
WILSON A. HIGGS, M.D., P.C.,

      Defendants and Respondents.

MAR 2 1993

Smith
SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and for the County of Flathead,
                    The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Craig Stephan, Attorney at Law (argued), Phoenix,
            Arizona
            Ann German, Attorney at Law, Libby, Montana

      For Respondent:

            I. James Heckathorn (argued) and Dana L.
            Christensen; Murphy, Robinson, Heckahorn &
                  Phillips, Kalispell, Montana

                        Submitted: April **21, 1992**

                        Decided: March 2, **1993**

Filed:

Clerk

Honorable Douglas G. Harkin, District Judge, delivered the Opinion of the Court.

The plaintiff, Patricia Wisher, appeals from a jury verdict rendered in a medical malpractice action tried in the Eleventh Judicial District Court, Flathead County. The defendant, Dr. Wilson Higgs, stipulated prior to trial that the preponderance of medical testimony established that Ms. Wisher incurred an injury during a surgery that he performed on November 14, 1979. Specifically, **Ms.** Wisher sustained a dehiscence, or hole, in her left inner ear following a left facial nerve decompression procedure. Dr. Higgs also stipulated that the preponderance of medical testimony established that the surgical result obtained was below the standard of care. The District Court ruled that this was negligence as a matter of law. Dr. Higgs presented a statute of limitations defense to the action.

The sole issue submitted to the jury was whether the tolling provisions of § 27-2-205, MCA, were met. Through the use of a special verdict form, the jury found by a preponderance of the evidence that (1) prior to November 1, 1981, through the use of reasonable diligence, Ms. Wisher should have discovered her injury, and that her injury may have been caused by the surgery; and (2) prior to November 1, 1981, Dr. Higgs's conduct did not prevent Ms. Wisher from exercising due diligence in discovering her injury or that her injury may have been caused by the surgery.

We affirm in part, and reverse and remand in part for a new trial on the issue of damages.

We restate the dispositive issues as follows:

2

1.    Whether there is substantial evidence, including expert medical evidence, in the trial record to support the jury's finding that Ms. Wisher, through the exercise of reasonable diligence, should have discovered before November 1, 1981, (i) her injury, and (ii) that her injury may have been caused by the surgery.

2.    Whether there is substantial evidence, including expert medical evidence, in the trial record to support the jury's finding that Dr. Higgs's conduct did not prevent Ms. Wisher from exercising due diligence in discovering her injury or that it may have been caused by the surgery prior to November 1, 1981.

On September 3, 1979, Patricia Wisher presented herself to the emergency room at Kalispell Regional Hospital complaining of a headache and paralysis on the left side of her face.  She was diagnosed with Bell's palsy, a disease process affecting the seventh cranial nerve.  Ms. Wisher initially sought follow-up care from a Kalispell neurologist named Dr. Schimpff on September 5, 1979.  After ruling out cranial pathology, Dr. Schimpff recommended that she follow-up with Dr. Higgs, a Kalispell otolaryngologist.

Ms. Wisher was initially examined by Dr. Higgs on September 6, 1979.  When her condition failed to improve with the use of steroids and the passage of time, Dr. Higgs recommended that Ms. Wisher undergo left facial nerve decompression surgery.  This surgery was performed at Kalispell Regional Hospital on November 14, 1979.

In the immediate post-operative period Ms. Wisher experienced symptoms of pain, nausea, dizziness, loss of equilibrium, vomiting,

and buzzing in her left ear. Dr. Higgs attributed these symptoms to the side effects of anesthesia and to a condition known as post-operative labyrinthitis, an inflammatory process of the inner ear canal which he attributed to the surgical procedure itself. Dr. Higgs noted that this condition persisted in spite of the use of labyrinthine suppressant drug therapy. He discharged Ms. Wisher from the hospital on November 18, 1979.

When Ms. wisher returned to Dr. Higgs's office on November 30, 1979, for an exam, Dr. Higgs noted that the symptoms of post-operative labyrinthitis remained at that time. He continued the labyrinthine suppressant therapy and instructed her to follow-up in two weeks. The exam on December 17, 1979, revealed that Ms. Wisher's balance had improved; however, her hearing problem remained unchanged. Dr. Higgs ordered her to continue the labyrinthine suppressant therapy and to return to his office in two months. She returned on February 22, 1980. Her condition remained unchanged.

On February 28, 1980, Dr. Higgs wrote a letter to Dr. Schimpff informing him that Ms. Wisher suffered from a post-operative labyrinthitis; however, he stated that he expected her to experience further improvement with the passage of time. Ms. Wisher returned to Dr. Higgs's office on March 6, 1980, for complaints of facial pressure, sore throat, and sneezing; and on June 2, 1980, for a left occipital neuralgia (headache). She did not return to Dr. Higgs's office for the remainder of 1980, 1981, or the first eight months of 1982. According to her testimony,

4

during this period of time she experienced some improvement in her symptoms.  This testimony is uncontradicted by the defense.

Thereafter, on September **20, 1982,** Ms. Wisher returned to Dr. Schimpff's office complaining of headaches, nausea, balance dysfunction, and tinnitus.  Dr. Schimpff scheduled her for a posterior fossa CT scan to rule out the possibility of a cranial tumor.  When a tumor was ruled out, he referred her back to Dr. Higgs for evaluation of continued tinnitus and decreased hearing in the left ear.  She returned to Dr. Higgs's office on September **24, 1982,** with complaints of increased left ear pressure and tinnitus. Dr. Higgs continued to treat her symptomatology as post-operative labyrinthitis at that time.

In early January **1983,** Ms. Wisher requested a referral from Dr. Higgs for her continuing symptoms.  Dr. Higgs referred Ms. Wisher to Dr. J.V.D. Hough of Oklahoma City, Oklahoma.  He wrote a letter to Dr. Hough on January **6, 1983,** which provided his assessment of Ms. Wisher's ongoing problem:

> Post operatively, [Ms. Wisher] developed what I felt was an acute labyrinthitis, in as much I was not aware of any fistula into the inner ear.  Post operatively, she experienced rather dramatic return of facial function, and gradual improvement of her balance disturbance over a period of a few weeks.  She continued to have hearing loss however, with a certain degree of tinnitus. **. . .**
>
> In mid **1980** she developed left occipital neuralgia which required medical therapy.  She continued to improve with the exception of her hearing and tinnitus during the interval until she was seen this Fall.
>
> [I]n September of **1982,** [she gave a history of] having heaviness in the right arm with decreased rapid alternating movements noted on physical examination.  She was left with a mild synkinesis of the left side of the face, no nystagmus, and the Weber on the forehead

5

lateralized to the right, indicating severe hearing loss in the left [ear]. She further had left occipital nerve tenderness. A CT head scan was then performed to exclude other CNS pathology and this was essentially normal.

Ms. Wisher did not follow-up with Dr. Hough in Oklahoma, but instead she saw physicians and chiropractors in Oregon and California. The record reveals that Ms. Wisher suffered from headaches, cervical spine pain, and TMJ pain prior to her surgery in 1979. Her testimony revealed that she sought continued therapy for these problems, and that she was unsure as to which medical condition was causing her symptoms. Ms. Wisher's final office visit with Dr. Higgs was on March 28, 1983, when she presented with complaints that her jaw was clamping. Dr. Higgs noted that her ears were okay. He provided a dental consultation.

Dr. Perjessy, a general practice dentist in Kalispell, began treating Ms. Wisher on May 16, 1983. He referred Ms. Wisher to both Dr. Windauer, a Kalispell orthodontist, and Dr. Bertz, an oral and maxillofacial surgeon in Scottsdale, Arizona, who ultimately performed multiple surgeries on both her left and right temporomandibular joints. Dr. Bertz testified that he was unable to distinguish whether the dizziness from which Ms. Wisher was suffering was attributable to the surgery by Dr. Higgs or whether it was symptomatic of her concurrent TMJ problems. He noted that the inflammation process around the TMJ and the semicircular canals of the inner ear were close in proximity and he could not rule out which process was causing her dizziness.

Dr. Bertz consulted with several Scottsdale, Arizona, physicians concerning Ms. Wisher's symptoms, including

6

neurologists, Dr. Goodell and Dr. Reese, and an otolaryngologist, Dr. Weiss.   Dr. Goodell initially suspected that Ms. Wisher suffered from a progressive neurologic phenomena.   However, after ruling this out by CT scan, he was of the opinion that Ms. Wisher suffered from residual hearing loss and facial weakness as a result of a viral neurologic lesion (the Bell's palsy) she suffered four years previously.   In other words, he attributed the symptoms to the underlying Bell's palsy pathology and not pathology associated with injury to the inner ear during surgery.   Dr. Weiss, the consulting otolaryngologist, was unable to diagnose a dehiscence in the inner ear.

Ms. Wisher saw another otolaryngologist named Dr. Nowak on January 24, 1984.  Dr. Nowak performed an audiogram which revealed sensorineural deafness of a moderately severe degree in her left ear.  He informed both Ms. Wisher and Dr. Bertz at that time that in his medical opinion this patient suffered from an injury to the horizontal canal of her left inner ear.  In his opinion Ms. Wisher sustained this injury during facial nerve decompression surgery in 1979.

Ms. Wisher filed an Application for Review before the Medical Legal Panel on November 1, 1984, eight months after learning of this medical opinion.  After the Medical Legal Panel heard the matter and rendered its decision on March 1, 1985, Ms. Wisher filed a complaint in District Court on March 29, 1985.

Dr. Nowak's medical opinion was not confirmed by diagnosis until 1989.  A scan performed on April 28, 1989, in Scottsdale

Arizona, and read by a radiologist by the name of Dr. Cook, revealed that "the lateral semicircular canal appear[ed] discontinuous in the axial plane." A repeat scan performed in 1990 at St. Joseph's Hospital and Medical Center, and read by Dr. Bird, revealed a "dehiscence of the lateral portion of the left lateral semicircular canal."

I

The first issue presented by Ms. Wisher is whether there is substantial evidence, including expert medical evidence, in the trial record to support the jury's finding that, through the use of reasonable diligence, she should have, prior to November 1, 1981, discovered (i) her injury, and (ii) that her injury may have been caused by the surgery. The standard of review used by this Court on an appeal based upon insufficient evidence is to determine whether the evidence is "substantial" enough to support the verdict. Guenther v. Finley (1989), 236 Mont. 422, 426, 769 P.2d 717, 720. Substantial evidence is relevant evidence which a reasonable person could accept as adequate to support a conclusion. Nicholson v. United Pacific Ins. Co. (1985), 219 Mont. 32, 42, 710 P.2d 1342, 1348-49. This Court recognizes that the jury is in the best position to weigh the evidence and consider the credibility of the witnesses, and, therefore, an examination of the sufficiency of the evidence must be made in a light most favorable to the prevailing party. Rock Springs Corp. v. Pierre (1980), 189 Mont. 137, 145-46, 615 P.2d 206, 211.

The substantive principles at issue in this case concern the tolling provisions in the statute of limitations for medical malpractice actions addressed in § 27-2-205, MCA:

(1) [An] action in tort . . . for injury . . . against a physician or surgeon . . . based upon alleged professional negligence . . . or €or an act, error, or omission, shall . . . be commenced within *3* years after the date of injury or *3* years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs last, but in no case may such action be commenced after 5 years from the date of injury. However, this time limitation shall be tolled for any period during which there has been a failure to disclose any act, error, or omission upon which such action is based and which is known to the plaintiff or through the use of reasonable diligence subsequent to said act, error, or omission would have been known to him.

The District Court instructed the jury in the law regarding this statute of limitations and its tolling provisions in Jury Instruction No. 14:

A statute of the State of Montana provides that an action against a physician or surgeon based upon alleged professional negligence must be commenced within three *(3)* years after the date of injury, or three *(3)* years after the Plaintiff discovers or, through the exercise of reasonable diligence should have discovered the injury, whichever occurs last.

For purposes of this action the Court has previously determined that the Defendant injured Plaintiff on November 14, 1979. The date that the Plaintiff actually discovered her injury had been caused by the surgery is January 24, 1984. The Plaintiff filed her action on November 1, 1984.

In this case the date of injury is (1) the date Plaintiff discovered or reasonably should have discovered her injury, and (2) that her injury may have been caused by the surgery. It is not necessary that Plaintiff be aware of the full extent of her injury, the details thereof, or the underlying cause. It is sufficient if Plaintiff knows generally that she has suffered harm and that the Defendant caused it.

9

Prior to providing the jury with this instruction, both parties submitted point briefs to the District Court addressing the statute of limitations issue in medical malpractice discovery cases. Dr. Higgs contends that the District Court appropriately applied the law in Major v. North Valley Hosp. (1988), 233 Mont. 25, 759 P.2d 153, in formulating the instruction given.

On appeal, Ms. Wisher argues that the court incorrectly instructed the jury on the law, in that the statute of limitations is tolled until a plaintiff discovers the legal cause of an injury. Hando v. PPG Industries, Inc. (1989), 236 Mont. 493, 501, 771 P.2d 956, 962. Ms. Wisher argues that there was a lack of evidence at trial to support a finding by the jury that through the use of reasonable diligence she should have discovered the legal cause of her injury prior to November 1, 1981.

Dr. Higgs argues that there was substantial evidence presented during trial that Ms. Wisher discovered her injury immediately following surgery on November 14, 1979, when she awoke with symptoms inconsistent with her pre-surgical state, and that she knew the symptoms constituted the injury which was caused by the surgery. Dr. Higgs argues that because Ms. Wisher knew the legal cause of her injury on the day of surgery, and because the statute of limitation in a medical malpractice claim is not tolled until a plaintiff discovers a legal right to bring an action for known injuries, Ms. Wisher's claim fails on the grounds that the statute of limitations has run.

The statute of limitations in any given case generally begins to run upon the occurrence of the last wrongful act relevant to the cause of action.  The statute of limitations is not tolled until a plaintiff discovers her legal right to bring an action for known injuries.  Major, 759 P.2d at 157; E.W.  v. D.C.H. (1988), 231 Mont. 481, 487, 754 P.2d 817, 820.   Nor is the statute tolled until a plaintiff learns the facts out of which a known cause of action arose.  Bennett v. Dow Chemical Co. (1986), 220 Mont. 117, 121, 713 P.2d 992, 994.   However, the application of those general rules becomes difficult where an injured person is prevented from knowing of his injury by concealment or other circumstances.  Bennett, 713 P.2d at 995.   In such cases, this Court has recognized certain exceptions which toll the statute of limitations until the injury is discovered.  Those exceptions include factual situations where a negligent act is concealed, Monroe v. Harper (1974), 164 Mont. 23, 28, 518 P.2d 788, 790; and where the plaintiff has sustained an injury which by its nature is self-concealing.  Johnson v. St. Patrick's Hospital (1966), 148 Mont. 125, 417 P.2d 469, aff'd after remand, 152 Mont. 300, 448 P.2d 729; Grey v. Silver Bow County (1967), 149 Mont. 213, 425 P.2d 819.

The facts in the present case are clearly distinguishable from those found in either Major or E.W. in that the wrongful act in both of those cases was easily identifiable and the injury simultaneous and obvious.  In contrast, the present case involves an alleged negligent act which by its nature manifests an injury that is self-concealing.  The uncontradicted evidence reveals that

11

Ms. Wisher did not have knowledge on the day of her surgery that her post-operative symptoms were caused by negligence on Dr. Higgs's part. On the contrary, the symptoms experienced by Ms. Wisher in the post-operative period were attributed to the surgical complication referred to as post-operative labyrinthitis, a condition that would resolve with the passage of time. Although Ms. Wisher perceived the symptoms, the knowledge that those symptoms were causally connected to negligent acts on Dr. Higgs's part was absent. As stated, this Court recognizes that self-concealing injuries of this type can preclude a strict application of the statutory bar.

Ms. Wisher urges this Court to adopt the holding from Hando, 771 P.2d at 962, as controlling in this case. Hando is this Court's most recent opinion interpreting the discovery rule as it applies to the statute of limitations in § 27-2-204, MCA. In Hando, the plaintiff immediately suspected that the symptoms she experienced after inhalation of paint fumes in 1981 constituted an injury, and she began to diligently pursue an opinion from multiple medical experts; however, she was not provided with a definitive diagnosis until 1984. She filed an action in October of 1985. The district court denied the defendant's motion for summary judgment on the statute of limitations issue, holding that the statute of limitations was tolled until a medical diagnosis confirmed the causal connection between Hando's "ailments" or "symptoms" and her alleged injury. On appeal, this Court affirmed the district court on that issue. Hando, 771 P.2d at 962. Although the facts in

12

<u>Hando</u> are distinguishable from the facts in the present case, the subtle similarity between the cases is apparent by the self-concealing nature of the injury.

Self-concealing injuries present unique roadblocks to a litigant's discovery of an injury. Prior to the enactment of § 27-2-205, MCA, in 1971, this Court applied the discovery doctrine in medical malpractice cases involving self-concealed injuries. In <u>Johnson</u>, a medical malpractice case in which a physician left a surgical sponge in a patient's hip, this Court held:

> Where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of the foreign object in his body. [Citation omitted.]

<u>Johnson</u>, 417 P.2d at 473. The Court viewed the date of discovery as the date on which the plaintiff obtained actual knowledge of the cause of the drainage from his hip. The drainage from the hip was the symptom of the injury, and not the injury itself. The striking similarity between the <u>Johnson</u> case and the present case is the plaintiffs' lack of awareness of the causal relationship between the injuries and the symptoms.

The second case applying the discovery doctrine to a self-concealing injury involved a plaintiff who underwent surgery on his leg at Silver Bow Hospital in Butte, Montana, on August 23, 1961. <u>Grey</u>, 425 P.2d at 819. On October 18, 1961, the plaintiff sought medical treatment from a Phillipsburg physician. When the physician cut a hole in the plaintiff's cast revealing the

13

incisional site, he discovered a staph infection. The plaintiff subsequently filed a medical malpractice claim on October **19, 1964,** claiming failure to use proper sterile technique during the surgical procedure. The district court granted the defendant's motion for summary judgment on the grounds that the plaintiff had not filed within the statute of limitations. This Court reversed, and in analogizing <u>Johnson</u> held:

> [T]here is a distinct factual difference between leaving a sponge in a patient's body by a surgeon and introducing infection into a patient's body due to a hospital's failure to employ proper sterile techniques during an operation. [However] . . . this distinction fails to recognize the real similarity between the two acts. The similarity is the fact that the patient does not know of his own condition--be it introducing the infection or leaving the sponge . . .

Grey, **425** P.2d at **820.** In Grey, we announced the equitable limitation of the discovery rule of giving full scope to the statute of limitations on the one hand, and according a reasonable measure of justice to the plaintiff on the other. Grey, 425 P.2d at 821. In balancing those opposing interests, this Court has consistently tolled the statute of limitations in self-concealing injury cases until the plaintiff discovers, or in the exercise of reasonable care and diligence should have discovered, his or her injuries. Our decision in <u>Hando</u> reflects this need to accord justice to a plaintiff who, even though exercising due diligence, is unable to find a causal connection between symptoms and injury. In the present case, there is a complete lack of evidence in the record to establish that Ms. Wisher causally connected the injury, or the dehiscence in her left inner ear, to her symptoms of hearing

loss, dizziness, vertigo, and loss of balance. This is particularly evident within the immediate eighteen-month period of time post-operatively.

However, as stated, the District Court's instruction to the jury in applying the tolling provisions in this case provided:

> [I]t is not necessary that Plaintiff be aware of the full extent of her injury, the details thereof, or the underlying cause. It is sufficient if Plaintiff knows generally that she has suffered harm and that the Defendant caused it.

At the close of evidence, the parties submitted proposed jury instructions on the law of the case. The court refused Ms. Wisher's proposed instruction which addressed the tolling provisions of § 27-2-205, MCA. However, Ms. Wisher did not specifically object to Jury Instruction No. 14. Generally, a failure to object to a jury instruction at the trial level amounts to a waiver of the right to raise the objection on appeal. State v. Holzapfel (1988), 230 Mont. 105, 113, 748 P.2d 953, 957. The instruction which is given without objection becomes the law of the case. Nicholson, 710 P.2d at 1356.

In addition, Ms. Wisher failed to raise the issue of the propriety of the special verdict form by objection at the time of its presentation to counsel. On appellate review, where no objection is raised to the special verdict form before its submission to the jury, the Court will not review the sufficiency of the form for the first time on appeal. Weinberg v. Farmers State Bank of Worden (1988), 231 Mont. 10, 19, 752 P.2d 719, 724. Based on the foregoing, this Court must examine the sufficiency of

15

evidence in view of the law of the case as provided to the jury. Having done that, this Court holds there is a total lack of evidence to support the verdict that Ms. Wisher knew generally that she suffered an injury prior to November **1, 1981,** or that Dr. Higgs caused it.

Prior to November **1, 1981,** Ms. Wisher knew she suffered from Bell's palsy, post-operative labyrinthitis, chronic headaches, cervical spine pain, and symptoms associated with a temporomandibular joint dysfunction. This is supported by the evidence in the medical record exhibits and testimony of Dr. Wilson, Dr. Higgs, the medical record exhibits of Kalispell Regional Hospital, and the testimony of Ms. Wisher. There is a lack of evidence that she knew or suspected that she suffered from an injury as the result of her surgery, or that through the use of due diligence she could have determined the cause of the multitude of ongoing symptoms which she was experiencing. This is particularly evident in light of Ms. Wisher's uncontradicted testimony that she experienced an improvement in her symptoms beginning the last half of **1980** up through the first eight months of **1982.** Ms. Wisher did not see Dr. Higgs during this period of time. In fact, there was no evidence submitted by the defense that she saw other doctors for those symptoms during that period of time.

We hold that there is a lack of substantial evidence, including expert medical evidence, in the trial record to support the jury's finding that Ms. Wisher, through the exercise of

reasonable diligence, should have discovered before November 1, 1981, (i) her injury, and (ii) that her injury may have been caused by the surgery.

## II

The second issue presented by Ms. Wisher is whether there is substantial evidence, including expert medical evidence, in the trial record to support the jury's finding that Dr. Higgs's conduct did not prevent her from exercising due diligence in discovering her injury or that it may have been caused by the surgery prior to November 1, 1981.

The District Court's instruction to the jury in applying the tolling provision under the concealment doctrine provided:

> {I]n those cases wherein Plaintiff has been prevented from knowing of her injury by concealment or other circumstances, certain exceptions exist. The Montana statute . . . provides that in such cases the time limitation shall be extended for any period for which the Defendant has failed to disclose any act, error or omission upon which such action is based and which is known to him or through the use of reasonable diligence subsequent to said act, error or omission would have been known to him.
>
> To suspend the operation of the statute of limitations the concealment must be of such a character as to prevent inquiry, escape investigation, or mislead or hinder acquisition of information disclosing a right of action.

Ms. Wisher argues that the uncontradicted evidence established that Dr. Higgs concealed material facts about her health care that bore directly upon the existence of the cause of action. Specifically, Dr. Higgs failed to disclose to her his awareness that her symptoms may have been the result of an injury sustained during surgery, and he failed to disclose to her the knowledge that she experienced a

sensorineural hearing loss post-operatively. Ms. Wisher cites case law from other jurisdictions which recognize a relationship of trust and confidence between a physician and a patient which rises to the level of a fiduciary relationship, and which she argues required Dr. Higgs to fully disclose facts regarding her health care. Hoopes v. Hammargren (Nev. 1986), 725 P.2d 238; Duquette v. Superior Court (Ariz. App. 1989), 778 P.2d 634; Estate of Leach v. Shapiro (Ohio App. 1984), 469 N.E.2d 1047; and Peralta v. Martinez (N.M. 1977), 564 P.2d 194, cert. denied, 567 P.2d 485.

Dr. Higgs argues that because he no longer was treating Ms. Wisher, nor did he try to prevent her from receiving separate medical opinions, there is a lack of evidence to suggest that he fraudulently concealed the injury. In order to have concealed the injury there must be substantial evidence of concealment between the date of surgery on November 14, 1979, and November 1, 1981. Following six months of follow-up, Ms. Wisher discontinued office visits to Dr. Higgs until September of 1982. Dr. Higgs did not treat Ms. Wisher from June 2, 1980, through November 1, 1981. Dr. Higgs denied knowledge of surgical injury to Ms. Wisher's inner ear until he was shown the results of a CT X-ray during his deposition in 1989.

The leading Montana case addressing the issue of fraudulent concealment in a medical malpractice case is Monroe v. Harper (1974), 164 Mont. 23, 518 P.2d 788. Although this Court found the doctrine of fraudulent concealment inapplicable given the facts of the case, Monroe addresses circumstances in which an injured person

18

is prevented from knowing of his injury due to concealment of facts by a treating physician, or a situation where the injury, by its nature, is difficult to discover until a later date.

> [M]ost courts give recognition to certain implied exceptions which toll the running of the statute when it can be shown that fraud had been perpetrated upon the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury. [Citation omitted.] The purpose is to promote equity and justice of the individual case by preventing a party from asserting his rights under a general technical rule of law when he has so conducted himself that it would be contrary to equity and good conscience to avail himself of his legal defense. [Citation omitted.]
>
> . . .
>
> To toll the statute of limitations the fraud must be of such a character as to prevent inquiry, elude investigation, or to mislead the party who claims the cause of action. [Citation omitted.] There must first be injury and then concealment. It is the cause of action which must be fraudulently concealed by failing to disclose the fact of injury from malpractice, by diverting the patient from discovering the malpractice that is the basis of the action. [Citation omitted.]

Monroe, 518 P.2d at 790.

The language of § 27-2-205, MCA, however, indicates that simply the failure to disclose facts, as opposed to affirmative, fraudulent concealment, is sufficient to toll the statute:

> [T]his time limitation shall be tolled for any period during which there has been a failure to disclose any act, error, or omission upon which such action is based and which is known to the plaintiff or through the use of reasonable diligence subsequent to said act, error, or omission would have been known to him.

The evidence presented as to the concealment issue in this case is conflicting and ultimately rests upon the credibility and weight to be afforded each witness's testimony. As stated, the standard of

review employed by the supreme Court on an appeal alleging insufficiency of evidence is to determine whether the evidence is "substantial" enough to support the verdict. Guenther v. Finley (1989), 236 Mont. 422, 426, 769 P.2d 717, 720. The evidence may be inherently weak and still be considered substantial. Wheeler v. City of Bozeman (1988), 232 Mont. 433, 437, 757 P.2d 345, 347. In addition, when conflicting evidence exists, the credibility and weight to be given to the conflicting evidence is within the province of the jury. Wheeler, 757 P.2d at 347. Because the evidence presented on this issue furnishes reasonable grounds for different conclusions, the findings of the jury will not be disturbed. Rock Springs Corp. v. Pierre (1980), 189 Mont. 137, 146, 615 P.2d 206, 211.

Based upon the foregoing, we hold that there was substantial evidence to support the jury's finding that Dr. Higgs's conduct did not prevent Ms. Wisher from exercising due diligence in discovering her injury or that it may have been caused by the surgery prior to November 1, 1981.

Affirmed in part, reversed in part, and remanded in part for a new trial on the issue of damages.


Honorable Douglas G. Harkin,
District Judge, sitting in place
of Justice Terry N. Trieweiler

20

We concur:

_____
Chief Justice

_____
John Conway Harrison

_____
William E Hunt Sr

_____
R C McDonough

_____
Karla M. Gray

_____
Justices

21