No. 87-511

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

HELEN MAJOR, Individually and as
Personal Representative of the Estate
of JUDITH M. EAYRS, and as Guardian and
Conservator of the Estate of HALLIE JEAN
EAYRS, a minor, JULIE SINA JOHNSON AND
LEIGH JOHNSON,

Plaintiffs and Appellants,

-vs-

NORTH VALLEY HOSPITAL and DEL B. COOLIDGE, M.D.,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard A. Reep; Datsopoulos, MacDonald & Lind,
Missoula, Montana

For Respondent:

Stephen C. Berg; Warden, Christiansen, Johnson & Berg,
Kalispell, Montana
I. James Heckathorn; Murphy, Robinson, Heckathorn &
Phillips, Kalispell, Montana

Submitted on Briefs: May 12, 1988

Decided: July 15, 1988

Filed: JUL 1 5 1988

*Ethel M. Harrison*

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Plaintiff Helen Major, individually and as Personal Representative of the Estate of Judith M. Eayrs, appeals from the summary judgment order of the District Court of the Eleventh Judicial District, Flathead County, declaring her claim barred by the applicable statute of limitations. We affirm.

Appellant presents two issues for review:

1. "Whether the District Court Erred in Making Findings of Fact upon Defendants' Motion for Summary Judgment."

2. "Whether the District Court Erred in Finding as a Matter of Law that the Statute of Limitation Barred the Claims of Helen Major, individually and as Personal Representative of the Estate of Judith Eayrs."

The facts can be summarized as follows: At approximately 7:40 a.m. on March 20, 1982, appellant received a telephone call from her daughter, Judith Eayrs (Judy). Judy told appellant that she was suffering from an extremely sore throat and needed medical attention. Appellant drove to her daughter's apartment, and at approximately 8:00 a.m., called North Valley Hospital in Whitefish to inform personnel there of Judy's condition and imminent arrival. While both appellant and her daughter lived in Kalispell, they decided it would be best to travel to Whitefish because Judy's treating physician and medical records were located there. Judy suffered from systemic lupus erythematosis, a disease with multiple symptoms including episodes of swelling in the throat with attendant breathing difficulty, and had been treated several times at North Valley Hospital.

Upon arriving at the hospital emergency room, appellant learned that the nurse on duty had not yet contacted Judy's

2

doctor, Dr. Ricker. The nurse logged a call to Dr. Ricker's clinic at 8:38 a.m. relaying Judy's complaint that her throat felt like it was closing shut. Dr. Ricker was not available that day, and the call was taken by his partner, Dr. Coolidge. The nurse called Coolidge again at approximately 9:00 a.m., and he arrived at the emergency room at approximately 9:20 a.m.

After being examined by Dr. Coolidge, Judy was taken for chest X-rays and admitted to the general ward. At approximately 10:20 a.m., she lunged from her bed toward the window and collapsed on the floor of her room. A code blue was sounded, but those attending Judy could not revive her, and she died of respiratory arrest.

In May of 1982, appellant sought legal assistance concerning a possible medical malpractice action arising out of Judy's death. On advice of counsel, she requested access to Judy's hospital records in July of 1982, but did not take possession of copies of those records until October of 1984. On April 17, 1985, appellant filed an Application for Review with the Medical-Legal Panel concerning the treatment received by Judy. This malpractice action was filed on August 9, 1985. The defendants moved for summary judgment based on the passing of more than three years between Judy's death and the filing of the Application for Review by the Medical-Legal Panel. The District Court granted the motion and entered its order of summary judgment on December 22, 1986. The order was certified as a final judgment on July 27, 1987, in order to facilitate an appeal to this Court.

## Issue I

Appellant presents essentially two arguments regarding the District Court's alleged error in making findings of fact. She first contends that the mere presence of findings in the court's order was error. Appellant cites case

3

authority from this Court that summary judgment is not to be utilized as a substitute for trial of factual controversies.

Appellant is correct that summary judgment is not a vehicle for deciding factual issues. However, she has failed to offer any authority for her assertion that including findings of fact in an order granting summary judgment is reversible error. As we have previously held, facts simply are not decided when summary judgment is granted. Rule 56, M.R.Civ.P., requires that there be no issue of material fact in order for summary judgment to issue. Inclusion of findings of fact in an order of summary judgment is therefore unnecessary and redundant. Boise Cascade Corp. v. First Security Bank of Anaconda (1979), 183 Mont. 378, 385, 600 P.2d 173, 178. In Boise, we held that the failure of the appellant to assign error to the findings of fact in the court's summary judgment order had no effect on the appeal. We did not hold the inclusion of the findings to be reversible error, and we decline to do so in this case.

Appellant's second argument is that the District Court made findings involving disputed issues of fact, and has thereby "precluded the Plaintiff from presenting certain proof at the time of trial." Appellant does not cite any authority that could give an indication of the basis for her argument. However, while the court's summary judgment order will operate to remove appellant from this action individually and as personal representative of her daughter's estate, she will remain a party as guardian of Hallie Jean Eayrs, Judy's minor daughter, and presumably will wish to enter factual proof in that capacity. We will therefore examine her argument in order to foreclose any doubts as to her ability to continue in her capacity as guardian.

The most relevant basis for appellant's argument is the "law of the case" doctrine, which states that once an issue

4

has been judicially determined, that decision should put the issue to rest for the remainder of the case. State v. Carden (1976), 170 Mont. 436, 555 P.2d 738. However, the law of the case doctrine does not apply when a separate issue is involved. In B.M. by Berger v. State (Mont. 1985), 698 P.2d 399, 42 St.Rep. 272, we held that the doctrine did not preclude a district court from granting summary judgment, even though this Court had earlier reversed an order granting summary judgment to the same party in the same case. The later summary judgment was upheld because it was based on a different motion and grounded on different issues. Berger, 698 P.2d at 401-02. The issue involved in this summary judgment is the running of the statute of limitations against appellant. The judge did not attempt to reach the merits of the malpractice claim. Conversely, the statute of limitations will not be an issue at the trial on the merits. The statute of limitations issue will be settled by the District Court's summary judgment order, but because it is an issue separate from the merits of this case, the summary judgment order cannot preclude appellant from attempting to prove the facts of her case.

Issue II.

Appellant asserts that the District Court erred in granting summary judgment on the basis of the running of the statute of limitations. She again advances two arguments. First, she argues that the statute did not begin to run until she discovered the legal cause of her daughter's death. Second, she asserts that the statute was tolled by acts, errors or omissions of the defendants.

Under our interpretation of Rule 56, M.R.Civ.P., summary judgment is properly granted if "there is no genuine issue as to any fact deemed material in light of the substantive principles that entitled the movant to judgment as a matter

5

of law." Flemming v. Flemming Farms, Inc. (Mont. 1986), 717 P.2d 1103, 1105-06, 43 St.Rep. 776, 779. The substantive principle involved here is the three-year statute of limitations for medical malpractice cases:

> Action in tort or contract for injury or death against a physician or surgeon, dentist,... based upon alleged professional negligence or for rendering professional services without consent or for an act, error or omission, shall ... be commenced within 3 years after the date of injury or 3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs last, ... However, this time limitation shall be tolled for any period during which there has been a failure to disclose any act, error, or omission upon which such action is based and which is known to him or through the use of reasonable diligence subsequent to said act, error, or omission would have been known to him.

Section 27-2-205(1), MCA.

Judy Eayrs died on March 20, 1982. On April 17, 1985, appellant filed an Application for Review with the Medical-Legal Panel, and initiated this action August 9, 1985. Normally, filing an application with the panel tolls the running of the statute of limitations until 30 days after the panel renders its decision. Section 27-6-702, MCA. However, three years and 27 days elapsed between Judy's death and the filing of the application. The District Court found that the statute had run as to appellant, and defendants were therefore entitled to summary judgment.

Appellant first asserts that the court's ruling was erroneous under the "discovery doctrine" incorporated in § 27-2-205(1), MCA, through the words "3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury". She argues the statute did not begin to run until she "discover[ed] facts

6

providing a causal connection between her daughter's death and the acts, errors or omissions of her daughter's health care provider." Appellant further argues that because Montana law requires expert testimony to prove malpractice, this "discovery" did not take place until she came into possession of her daughter's medical records in October of 1984, giving her the opportunity to have the records reviewed by an expert. We disagree.

Appellant notes that this Court has not yet construed § 27-2-205, MCA, and cites Bennett v. Dow Chemical Co., et al., (Mont. 1986), 713 P.2d 992, 43 St.Rep. 221, for guidance in the application of the discovery doctrine. In Bennett we stated, "the fact that a party with a cause of action has no knowledge of his rights, or even the facts out of which the cause arises, does not delay the running of the statute of limitations until [the party] discovers the facts or learns of his rights under those facts." Bennett, 713 P.2d at 994. However, we also noted that in cases where the plaintiff was prevented from knowing of his injury by concealment or other circumstances, certain recognized exceptions would operate to toll the statute of limitations. It is this discussion that appellant relies on for her interpretation of the discovery doctrine.

As we said in Bennett, the farthest reaches of the discovery doctrine in Montana are represented by the case of Hornung v. Richardson-Merrill, Inc. (D.Mont. 1970), 317 F.Supp. 183. In Hornung, the court tolled the statute of limitations in a products liability case until the plaintiff discovered that his cataracts may have been caused by the defendant's drug. Appellant knew that her daughter's death may have been caused by medical malpractice on the day she died. She testified in deposition that on March 20, 1982,

7

she thought Judy did not receive adequate treatment at the hospital, describing the events of the day as a "nightmare".

Furthermore, we have held that failure to understand the causal relationship between an injury and the alleged wrongful act will not resuscitate a claim on which the statute of limitations has run. E.W. v. D.C.H. (Mont. 1988), 754 P.2d 817, 820, 45 St.Rep. 778, 782-83, citing Mobley v. Hall (1983), 202 Mont. 227, 657 P.2d 604. Appellant's alleged lack of knowledge of the facts connecting her daughter's death to acts of the defendants did not prevent her from discovering the injury at issue in this case.

Appellant also contends that the statute was tolled by the acts or omissions of the defendants, which concealed the cause of Judy's death. She points to the language in § 27-2-205, MCA, providing for such a toll for failure to disclose any act, error or omission upon which the action is based. According to her brief, appellant was stymied in her attempts to gain access to Judy's records, first by the failure of Dr. Coolidge to finalize the records and then by the refusal of the hospital to allow her access to them.

The statutory language pointed to by appellant is the codification of the doctrine of fraudulent concealment. To toll the statute of limitations in a medical malpractice case, "It is the cause of action which must be fraudulently concealed by failing to disclose the fact of injury from malpractice, by diverting the patient from discovering the malpractice that is the basis of the action." Monroe v. Harper (1974), 164 Mont. 23, 28, 518 P.2d 788, 790, (emphasis supplied). Appellant obviously was cognizant of the fact of the injury complained of here on the day her daughter died. As pointed out above, appellant was also aware of the alleged wrongful acts complained of in this case on that day, and therefore "discovered" her cause of action on March 20, 1982.

8

She was not prevented from doing so through acts of concealment by defendants.

The District Court was correct in issuing its order granting summary judgment. The cause of action accrued on March 20, 1982, and the application for review was not filed with the Medical-Legal Panel until April 17, 1985. The statute of limitations had run against appellant, and there being no basis for tolling the statute, no issue of material fact existed as to defendants' entitlement to summary judgment.

We affirm the order of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9

Mr. Justice John C. Sheehy, dissenting:


I dissent to the interpretation put upon the statutory language of § 27-2-205(1), MCA, by the majority.

One basis of my dissent is that the majority have changed the tolling language of the statute from a failure to disclose to one of fraudulent concealment of information. That interpretation is a severe limitation on the legislative act, for it constricts the tolling statute to actual fraud by the medical person. The word "fraud" appears nowhere in the statute. The time for filing an action for malpractice could as well be tolled for negligent concealment as for fraudulent or intentional concealment, if the statutes were properly construed.

The second basis of my dissent is that fraudulent concealment is not involved in this case. What is involved is the issue when the plaintiff, through the use of reasonable diligence, could have discovered the claimed medical malpractice. The tolling statute, § 27-2-205(1), applies solely to malpractice cases. It has three distinct features: (1) the statute of limitations for medical malpractice is three years, but it is tolled (2) until the plaintiff discovers or by reasonable diligence should have discovered the medical malpractice, or (3) during the period when the medical person has failed to disclose the malpractice known to him or by reasonable diligence should have been known to him. Here the plaintiff's case falls in the second category: when did she discover through reasonable diligence the claimed malpractice?

When the issue is properly examined, one sees that a question of fact exists as to when the statute began to run. The District Court, and now the majority, resolved that issue

summarily by holding that on the <u>date</u> <u>of</u> <u>death</u> she should reasonably have known that the death was caused or accelerated by malpractice. I disagree with that conclusion. No lay person should be considered to have that degree of expertise about the treatment of lupus so as to impute as a matter of law knowledge of malpractice in the course of the treatment. I don't have that kind of expertise and neither does any member of this Court. The time for filing her action should be tolled in this case at least for the period required by reasonable diligence to find and consult with experts about the treatment of the decedent. That is a question of fact, not susceptible to summary judgment by any court. Undoubtedly the reasonable period would take more than 27 days, for which period the plaintiff is here denied her day in court.

I would reverse the summary judgment and remand for further proceedings, including determination of the fact issue as to the tolling of the limitations statute.

_____
John R. Sheehy
Justice

I join in the foregoing dissent.

_____
William E. Hunt
Justice

-11-