No. 97-576

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 88N

RUSSELL J. LUNDGREN,

Plaintiff and Appellant,

v.

EASTERN MONTANA COMMUNITY MENTAL
HEALTH CENTER, a Montana Corporation, and
PETER BRUNO,

Defendants and Respondents.

APPEAL FROM:   District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable Dale Cox, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Clarence Belue, Attorney at Law, Billings, Montana

For Respondents:

Kenneth D. Tolliver; Wright, Tolliver & Guthals;
Billings, Montana

Submitted on Briefs: March 19, 1998

Decided:   April 23, 1998

Filed:

_____

Clerk
Justice Jim Regnier delivered the opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    In October 1995, plaintiff and appellant Russell J. Lundgren filed an action in the District Court for the Seventh Judicial District in Dawson County against the Eastern Montana Community Mental Health Center and Peter Bruno, a licensed professional counselor, alleging professional and medical negligence in connection with the preparation of a psychosexual evaluation in which Peter Bruno concluded Lundgren had sexually abused his children.  The respondents subsequently filed a motion for summary judgment on the grounds that the applicable three-year statute of limitations barred Lundgren's suit.  On July 22, 1997, the District Court issued an order and memorandum granting the respondents' motion for summary judgment.  It is from this order that Lundgren presently appeals.  For the reasons stated below, we affirm.

¶3    The dispositive issue on appeal is whether the District Court erred in granting Bruno and the Mental Health Center's motion for summary judgment.
                FACTUAL AND PROCEDURAL BACKGROUND

¶4    Lundgren has three adult children, born of a first marriage which ended in divorce in 1968. In early November 1990, Lundgren received a letter from his 36-year-old son David, in which David accused Lundgren of sexually abusing him as a child. At the time Lundgren received the letter, he was living in Miles City, Montana, with his second wife, Patricia Lundgren, and their two minor children. In December 1990, Lundgren's adult daughter, Cynthia, sent Patricia a letter indicating that Lundgren had sexually abused her as a child as well.

¶5    Concerned about the allegations of sexual abuse made by Lundgren's adult children, Patricia urged Lundgren to seek counseling. On December 26, 1990, Patricia separated from Lundgren, taking their two young children with her to visit her mother in Florida. Prior to her return five weeks later, Patricia asked that Lundgren move out of the house, which he did. The two remained separated until their divorce in 1992.

¶6    In January 1991, Lundgren sought an evaluation from Peter Bruno, a Licensed Professional Counselor at the Eastern Montana Community Mental Health Center. Bruno conducted a battery of tests, and on January 15, 1991, completed a lengthy written psychosexual evaluation. In the evaluation, Bruno explained that Lundgren's "psychological results indicate that he uses the defenses of repression and dissociation or dissimulation. Thus . . . it is possible that he has committed a sexual offense against his son and has no clear memory of it." Moreover, among Bruno's diagnostic impressions were the

following statements: "The information reported above certainly suggests the probability of a dissociative disorder. Because men who commit sexual crimes are greatly conflicted, it is also possible that we are dealing with someone here who is pedophiliac and in strong denial."

¶7    On January 15, 1991, Lundgren signed three separate forms authorizing the Mental Health Center to disclose the results of his psychosexual evaluation to his wife Patricia, and his adult children, David and Cynthia. On January 31, 1991, Bruno wrote a letter to Patricia, David, and Cynthia in which he disclosed his preliminary findings. In the letter, Bruno explained that he had told Lundgren "the only possible way I could see all the information fitting together: He dissociates. In other words, he has done something to at least David and he has this walled off from his conscious mind."

¶8    Lundgren received a copy of Bruno's letter, and on April 12, 1991, wrote a letter to Bruno terminating their professional relationship. Lundgren subsequently consulted with two different psychologists, neither of whom definitively refuted the results of Bruno's evaluation.

¶9    In September 1992, Lundgren learned of the False Memory Syndrome Foundation (FMSF), and attended an FMSF conference in Philadelphia sometime during April 1993.  Through the FMSF, Lundgren learned of Dr. John Cannell, a psychiatrist in Missoula, Montana. Dr. Cannell counseled and examined Lundgren, and on March 17, 1995, completed a lengthy written opinion in which he faulted the methods and procedures Bruno used to prepare his psychosexual evaluation.

¶10  On March 29, 1995, Lundgren filed a claim with the Montana Medical Legal Panel. Lundgren subsequently filed suit in district court against Bruno and the Mental Health Center on October 4, 1995. On April 21, 1997, Bruno and the Mental Health Center filed a motion for summary judgment on the grounds that Lundgren's suit was barred by § 27-2-204, MCA, the three-year statute of limitations for general tort actions, and by § 27-2-205, MCA, the three-year statute of limitations for medical malpractice actions. The District Court granted the respondents' motion for summary judgment, and on August 1, 1997, entered its final judgment dismissing Lundgren's claims with prejudice. On September 2, 1997, Lundgren filed his notice of appeal from the District Court's summary judgment order.

STANDARD OF REVIEW

¶11  This Court's standard of review in appeals from summary judgment rulings is de novo. Treichel v. State Farm Mut. Auto. Ins. Co. (1997), 280 Mont. 443, 446, 930 P.2d 661, 663. (citing Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). This Court reviews a summary judgment order entered pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. Treichel, 280 Mont. at 446, 930 P.2d at 663 (citing Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903).

¶12   In proving that summary judgment is appropriate:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determinations made by the district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903.

¶13   Moreover, the "moving party has the burden of showing a complete absence of any genuine issue as to all facts considered material in light of the substantive principles that entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment." Kolar v. Bergo (1996), 280 Mont. 262, 266, 929 P.2d 867, 869.

## DISCUSSION

¶14   Bruno and the Mental Health Center filed a motion for summary judgment, arguing that the applicable three-year statutes of limitations for general and medical negligence, codified at §§ 27-2-204 and -205, MCA, respectively, barred Lundgren's suit. The District Court agreed, concluding that because Lundgren's claim accrued in January 1991, but because he did not file suit until October 1995, his action was time barred. In so doing, the court embarked upon a collective discussion of §§ 27-2-204 and -205, MCA, effectively concluding that the three-year time limitation contained in either statute would operate as a valid bar to Lundgren's suit.

¶15   On appeal, Lundgren preliminarily asserts that the three-year statute of limitations for general negligence actions, codified at § 27-2-204, MCA, and the tolling provisions contained in § 27-2-102(3), MCA, apply to his claims against both Bruno and the Mental Health Center. In its order granting respondents' motion, the District Court identified and discussed both § 27-2-204, MCA, and § 27-2-205, MCA, but did not specifically identify which of the two statutes governs Lundgren's claims against Bruno and the Mental Health Center.

¶16   Although the court made no definitive determination as to the applicable statute of limitations, its failure to do so is of no ultimate consequence under the circumstances of this case. Both §§ 27-2-204 and -205, MCA, provide for a three-year statute of limitations. Although different tolling provisions apply to each statute, the court thoroughly discussed the factors relevant to each before concluding that Lundgren's "injuries do not fall within the discovery rule exceptions, nor do exigent circumstances exist that would permit the tolling of the statute on equitable grounds." From our review, however, it is clear that § 27-2-204, MCA, is the appropriate statute to apply in this instance. Licensed professional counselors, such as Bruno, are not

included in the specified professions listed in § 27-2-205, MCA. Likewise, the Eastern Montana Community Mental Health Center is not a facility governed by § 27-2-205, MCA. We will, accordingly, confine our analysis to the application of § 27-2-204, MCA, and the corresponding tolling provisions of § 27-2-102(3), MCA.

¶17 Section 27-2-204, MCA, sets forth the applicable period of limitations for tort actions, providing specifically that "the period prescribed for the commencement of an action upon a liability not founded upon an instrument in writing is within 3 years." Section 27-2-102(3), MCA, codifies the discovery doctrine, which may toll the three-year statute of limitations applicable to general tort actions under the following circumstances:

> The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:
>> (a) the facts constituting the claim are by their nature concealed or self-concealing; or
>> (b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause.

Section 27-2-102(3), MCA.

¶18 Although it did not specifically reference § 27-2-102(3), MCA, in its order granting the respondents' motion for summary judgment, the District Court concluded that Lundgren "was aware in 1991 that he was injured by Mr. Bruno, yet failed to act upon that knowledge for some four (4) years." The court determined that Lundgren's injuries were not of a self-concealing nature, and concluded that neither defendant had taken any action to prevent Lundgren from discovering those injuries. The court reasoned that "Bruno's actions are the only reasonable explanation for the development of [Lundgren's] injuries," and wrote that although Lundgren "knew or was on notice of Defendant Bruno's role in his injuries, he did not diligently pursue his investigation of the origin of those injuries, and the equities of the situation do not counsel for tolling the statute of limitations."

¶19 On appeal, Lundgren argues the District Court erred in effectively concluding the discovery doctrine, codified at § 27-2-102(3), MCA, does not operate to toll the three-year statute of limitations in this case. More specifically, Lundgren asserts the District Court erred in concluding that, because his injuries were not self-concealing and because the respondents had not acted to conceal their allegedly negligent actions, Lundgren knew in 1991 that he had been injured by Bruno, and the three-year statute of limitations began to run at that time.

¶20 In support of his assertion that his injury was indeed of a self-concealing nature, Lundgren argues that when he first met with Bruno he believed he had not sexually abused his children, but claims Bruno convinced

him "he was in fact guilty, or at least that he might be guilty." Relying on Bruno's professional opinion, Lundgren argues, he continued to believe he might have abused his children until he attended the FMSF conference in Philadelphia. It was not until he attended this FMSF conference, Lundgren asserts, that he had reason to suspect Bruno had wronged him. Because his injuries were self-concealing, Lundgren argues the District Court erred in concluding he was aware of his injury and of the facts constituting his claim as early as 1991, and that the applicable statute of limitations began to run at that time. At a minimum, Lundgren asserts, there exists a genuine issue of material fact as to when he discovered the facts constituting his claim.

¶21 The respondents, in contrast, assert the undisputed facts of record support the District Court's determination that all of the facts constituting Lundgren's claim had occurred and were known to him on January 31, 1991, or shortly thereafter. Respondents note, for example, that it was in early 1991 that Lundgren received a copy of Bruno's letter to David, Cynthia, and Patricia, explaining the results of Lundgren's psychosexual evaluation. After receiving a copy of Bruno's letter, Lundgren wrote to Bruno on April 12, 1991, with the express purpose of terminating their professional relationship. Respondents argue that the contents of Lundgren's April 12, 1991, letter, as well as Lundgren's own deposition testimony, demonstrate that it was in early 1991 that Lundgren first believed Bruno had wronged him.

¶22 Although Lundgren argues otherwise on appeal, the undisputed evidence of record indicates it was indeed early in 1991 that Lundgren first learned of the facts constituting his claim against Bruno. Lundgren was upset when he learned of Bruno's January 31, 1991, letter in which the counselor expressed his opinion that Lundgren had "done something sexual" to his son David. As a result of Bruno's revelation, Lundgren wrote a letter to Bruno on April 12, 1991, terminating their professional relationship. In that letter, Lundgren wrote:

> The test that you planned for me is not the reason for my action. I would welcome it if it in some way were to be used to clear my name. But you yourself said that it wouldn't. The second reason is that I really don't trust you. When I read the letter that you sent to Pat and my children you wiped out any trust that I had in you.

¶23 Moreover, the following deposition testimony indicates Lundgren believed in 1991 that Bruno had wronged him:

> Q: When did you first become aware that [Bruno] had done something that you felt was a breach of your understanding with him?
>
> A: My first time was when I received -- when he wrote letters to my children that I had no knowledge about him writing, because I had been seeing him, and he had not told me his feelings about me; and in the letter that he had written to my children and my wife, he basically said that I was guilty and that

I was in denial and he was glad to be on their team, and it was -- and this wasn't -- this wasn't -- I wasn't given any idea of this, this came as a complete shock to me, and that was the first time that I felt really bad about it. I was devastated.

¶24  Although certain portions of Lundgren's deposition indicate he initially struggled with the question of his own guilt or innocence in the face of Bruno's evaluation, that he did so does not mean he was unaware that it was Bruno's evaluation which led to the injuries of which he now complains.  For summary judgment purposes, we will assume, as Lundgren alleges, that it was not until he attended the FMSF conference or received Dr. Cannell's report that Lundgren first received confirmation that Bruno had acted negligently in preparing the psychosexual evaluation in question.  Even assuming it was not until 1993 that Lundgren received professional confirmation that he had not sexually abused his children, it was in early 1991 that Lundgren first learned of Bruno's actions, questioned his conduct and the results contained in the psychosexual evaluation, and thereby learned of the "facts constituting his claim."  For the statute of limitations to begin, it is sufficient that a plaintiff know his or her injuries were caused by acts which may have been wrongful.  See, e.g., Major v. North Valley Hosp. (1988), 233 Mont. 25, 30, 759 P.2d 153, 156.  Here, Lundgren knew in early 1991 that he had been injured, and that it might have been Bruno's negligence which caused those injuries.  As the District Court concluded, "Bruno's actions are the only reasonable explanation for the development of [Lundgren's] injuries."

¶25  Arguing that his injuries were self-concealing, Lundgren additionally points to our decision in Blackburn v. Blue Mountain Women's Clinic (Mont. 1997), 951 P.2d 1, 54 St. Rep. 1303, in which we held that the "[n]ondisclosure of information is, by its nature, self-concealing." Blackburn, 951 P.2d at 12, 54 St. Rep. at 1311.  In the present case, Lundgren argues Bruno furnished him with false information in the psychosexual evaluation, and correspondingly withheld accurate information, and that his injuries were thus of a self-concealing nature.

¶26  Having reviewed the record, we conclude Lundgren has not, in substance, alleged that Bruno withheld accurate information, but rather that he acted negligently in concluding Lundgren had sexually abused his children and in preparing Lundgren's psychosexual evaluation. Based on the foregoing, we hold the District Court did not err in concluding Lundgren's injuries were not of a self-concealing nature, and that he thus "knew or at least suspected that he was harmed by Mr. Bruno's actions, yet pursued no legal action until apprised of his right to do so some four (4) years later."

¶27  With reference to § 27-2-102(3)(b), MCA, Lundgren argues the court erred in concluding that, "[a]t no time did Defendant Bruno hide the methods used in the psychosexual evaluation from Plaintiff or inhibit Plaintiff's efforts to refute his conclusions." Instead, Lundgren asserts Bruno concealed his allegedly negligent actions in two ways.  First, Lundgren asserts Bruno acted to conceal the truth when he originally gave Lundgren the allegedly false

information contained in his psychosexual evaluation.  Second, Lundgren asserts that "each time Lundgren asked for a retraction and Bruno refused to give one," Bruno continued to conceal his alleged wrongdoing, thereby tolling the statute of limitations.

¶28  We conclude that Bruno, in explaining the results of his psychosexual evaluation to Lundgren, was not acting to prevent Lundgren from discovering his alleged injury or its cause.  Rather, Bruno was simply rendering the professional opinion about which Lundgren now complains.  Moreover, that Bruno later refused to retract the psychosexual evaluation or otherwise amend his opinion, does not mean he was attempting to conceal Lundgren's injury or its cause.  Accordingly, we hold the District Court correctly concluded that the "[d]efendants did not fraudulently conceal the allegedly negligent actions."

¶29  Based on the foregoing, we hold the District Court correctly concluded there exists no question of fact precluding summary judgment in respondents' favor on the grounds that the three year statute of limitations bars Lundgren's suit.  We affirm the decision of the District Court granting summary judgment in favor of Bruno and the Mental Health Center.

/S/  JIM REGNIER

We Concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  W. WILLIAM LEAPHART
/S/  JAMES C. NELSON