DA 06-0464

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 281

**FILED**

August 11 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

EDWARD D. RUNSTROM, personal representative
of the Estate of RICHARD RUNSTROM, and
EDWARD and NANCY RUNSTROM, Individually,

        Plaintiffs and Appellants,

   v.

JAKE ALLEN, M.D.,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV-05-511
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Douglas A. Buxbaum, John M. Fitzpatrick; Buxbaum, Daue &
          Fitzpatrick, PLLC, Missoula, Montana

      For Appellee:

          John H. Maynard, Kenneth K. Lay; Crowley, Haughey, Hanson, Toole
          & Dietrich, PLLP, Helena, Montana

      For Amicus:

          William A. Rossbach; Rossbach Hart Bechtold, PC, Missoula, Montana
          (for Montana Trial Lawyers Association)

                        Submitted on Briefs:  July 18, 2007
                                 Decided:  August 11, 2008

Filed:

                               Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Edward D. Runstrom (Ed), acting as personal representative of the Estate of Richard Runstrom, and Edward (Ed) and Nancy Runstrom, individually, appeal from the order entered by the Eighth Judicial District Court, Cascade County, granting summary judgment to Jake Allen, M.D. (Dr. Allen) on the basis that the applicable statute of limitations had expired.  We affirm.

¶2     The restated issues on appeal are:

¶3     1.  Did the District Court err in concluding that minority tolling under § 27-2-401(1), MCA, does not apply to the limitations period for the survival claim?

¶4     2.  Did the District Court err in concluding that minority tolling under § 27-2-401(1), MCA, does not apply to the limitations period for the wrongful death claim?

¶5     3.  Did the District Court err in concluding that the "discovery" provision of § 27-2-205(1), MCA, does not delay the running of the limitations period?

¶6     4.  Does the "failure to disclose" provision of § 27-2-205(1), MCA, apply to the 3-year limitations period?

**BACKGROUND**

¶7     On August 3, 2000, Ed and Nancy's son Richard sustained a broken femur in an all-terrain vehicle accident.  An ambulance took him to the emergency room at Benefis Healthcare, Inc. (Benefis), where Dr. Allen was the trauma surgeon on call.  Richard died the next day; he was sixteen years old.  On the day Richard died, Ed requested an autopsy and confronted Dr. Allen.  In the weeks following Richard's death, Ed obtained the autopsy

2

report and Richard's medical records. He subsequently consulted with attorneys.

¶8 On February 13, 2004, the Great Falls Tribune reported on an administrative proceeding regarding Dr. Allen, and referred to a peer reviewer's report and some of Dr. Allen's former patients whose names had not been released. Ed and Nancy believed Richard was one of the unnamed patients, and they obtained documents associated with the administrative proceeding.

¶9 On July 30, 2004, Ed and Nancy initiated a proceeding with the Montana Medical Legal Panel (MMLP), which ended in April of 2005. In May of 2005, Ed and Nancy sued Benefis and Dr. Allen, asserting wrongful death and survival medical malpractice claims. Benefis and Dr. Allen moved for summary judgment on statute of limitations grounds. The District Court granted both defendants' motions.

¶10 Ed and Nancy appealed, and we subsequently granted their motion to dismiss Benefis. Consequently, this appeal is limited to the judgment in Dr. Allen's favor. We set forth additional facts as necessary below.

## STANDARD OF REVIEW

¶11 Summary judgment is proper under M. R. Civ. P. 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." We review a summary judgment ruling de novo. *Fabich v. PPL Montana, LLC*, 2007 MT 258, ¶ 9, 339 Mont. 289, ¶ 9, 170 P.3d 943, ¶ 9 (citation omitted).

3

**DISCUSSION**

¶12 This case involves a wrongful death claim and a survival claim. Only an estate's personal representative—here, Ed—may bring a wrongful death action. *See* § 27-1-513, MCA; *Renville v. Fredrickson*, 2004 MT 324, ¶¶ 20-25, 324 Mont. 86, ¶¶ 20-25, 101 P.3d 773, ¶¶ 20-25. Moreover, as discussed further below, only an estate's personal representative—again, Ed in this case—may bring a survival action. *See In re Estate of Lambert*, 2006 MT 229, ¶ 15, 333 Mont. 444, ¶ 15, 143 P.3d 426, ¶ 15 (citations omitted). The parties have not requested a determination of whether Ed and Nancy are properly acting in their individual capacities in bringing the wrongful death claim, and such a determination would not substantively affect the disposition of this case. Accordingly, we treat Ed as the plaintiff and appellant.

¶13 **1. Did the District Court err in concluding that minority tolling under § 27-2-401(1), MCA, does not apply to the limitations period for the survival claim?**

¶14 The statute of limitations for a medical malpractice claim is § 27-2-205(1), MCA, which states, in pertinent part, that:

> [a]ction in tort or contract for injury or death against a physician or surgeon . . . based upon alleged professional negligence . . . or for an act, error, or omission, must, except as provided in subsection (2), be commenced within 3 years after the date of injury or within 3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs last, but in no case may an action be commenced after 5 years from the date of injury. However, this time limitation is tolled for any period during which there has been a failure to disclose any act, error, or omission upon which an action is based and that is known to the defendant or through the use of reasonable diligence subsequent to the act, error, or omission would have been known to the defendant.

Thus, except as discussed below, the statute of limitations for a medical malpractice claim

4

generally is 3 years. Section 27-2-205(1), MCA. The parties do not dispute that, because §
27-6-702, MCA, tolls the limitations period during a MMLP proceeding and for 30 days
thereafter, only the 4-year period between Richard's death in August of 2000 and the filing
of the MMLP claim in July of 2004 is at issue.

¶15 In the District Court, Ed asserted that minority tolling delayed the running of the 3-
year statute of limitations for the estate's survival claim until November 3, 2001, the date
Richard would have turned 18 had he lived. Stated differently, Ed contended the limitations
period did not expire until November 3, 2004, and the MMLP claim was timely.

¶16 The District Court rejected Ed's argument, relying on cases from other jurisdictions
for the proposition that death ends a minor's "disability"—by which, as discussed further
below, the court was referring to a minor's inability to sue or defend against suit without
assistance. While Ed and Dr. Allen discuss out-of-state cases on appeal, we address this
issue in light of Montana authorities.

¶17 A minor may enforce his or her rights by civil action or other legal proceedings in the
same manner as a person of full age, except that a guardian must conduct the action or
proceedings. Section 27-1-511, MCA. Stated differently, a minor is under a disability,
insofar as he or she may not sue or defend against suit without the assistance of a person who
has reached majority. *See* § 27-1-511, MCA; M. R. Civ. P. 17(c).

¶18 Section 27-2-401(1), MCA, provides in pertinent part that:

[i]f a person entitled to bring an action mentioned in part 2 [of Title 27,
chapter 2, MCA] . . . is, at the time the cause of action accrues . . . a minor . . .
the time of the disability is not a part of the time limit for commencing the
action.

5

Thus, § 27-2-401(1), MCA, generally applies to wrongful death and medical malpractice actions because they are "mentioned" in §§ 27-2-204(2) and -205, MCA. Minority tolling applies, however, only "[i]f a person entitled to bring an action . . . is, at the time the cause of action accrues . . . a minor[.]" *See* § 27-2-401(1), MCA.

¶19 A survival action is a cause of action that arises during a person's lifetime; it survives his or her death. *See* § 27-1-501(1), MCA; *Estate of Lambert*, ¶ 15. No survival action exists if the person dies instantaneously, and any damages suffered are personal to the decedent. *See Estate of Lambert*, ¶ 15 (citations omitted). A survival action belongs to the decedent's estate, and only the estate's personal representative may bring the survival action. *Estate of Lambert*, ¶ 15 (citations omitted). The personal representative of an estate may not be under the age of 18. *See* § 72-3-501(1), MCA.

¶20 After Richard's death, Ed—as the personal representative of Richard's estate—was the "person entitled to bring" the survival claim. *See* § 27-2-401(1), MCA. It is undisputed that Ed was not a minor when the cause of action accrued, and he was not—and could not have been—a minor when he filed the survival action. *See* § 72-3-501(1), MCA. Based on the plain language of § 27-2-401(1), MCA, we conclude minority tolling does not apply to the time after Richard's death, when Ed—not Richard—was the "person entitled to bring" the survival action.

¶21 Ed argues, however, that the Legislature contemplated that death would end tolling of the 3-year limitations period in § 27-2-205(1), MCA, for some medical malpractice claims involving minors. He relies on § 27-2-205(2), MCA, which states:

[n]otwithstanding the provisions of 27-2-401, in an action for death or injury of a minor who was under the age of 4 on the date of the minor's injury, the period of limitations in subsection (1) begins to run when the minor reaches the minor's eighth birthday or dies, whichever occurs first, and the time for commencement of the action is tolled during any period during which the minor does not reside with a parent or guardian.

Ed highlights the "or dies" language in § 27-2-205(2), MCA, and the omission of such language in § 27-2-401(1), MCA. Via that language, Ed asserts the Legislature intended death to end "eighth birthday" tolling in survival medical malpractice actions involving children injured before age 4, but not to end minority tolling before a child's eighteenth birthday in survival medical malpractice cases involving minors injured at age 4 or older. His arguments are not persuasive.

¶22    Notwithstanding the "or dies" language in § 27-2-205(2), MCA, only the adult personal representative of an estate may bring a survival medical malpractice claim regarding injuries the deceased allegedly sustained as a minor, regardless of whether the action involves injury to a minor younger or older than 4 years of age. *See Estate of Lambert*, ¶ 15; § 72-3-501(1), MCA. While tolling applies in a survival medical malpractice claim to the time a minor—or, in an "under age 4" injury case, a child under age 8—lived between the accrual of the cause of action and the minor's death, the tolling does not apply to the time after the minor's death, when the estate's personal representative must bring the action. *See Estate of Lambert*, ¶ 15. Because Richard died the day after Dr. Allen first became involved in his care, minority tolling extended the limitations period by no more than one day.

¶23    Alternatively, Ed relies on *Payne v. Eighth Judicial Dist. Court*, 2002 MT 313, 313

Mont. 118, 60 P.3d 469, in asserting a survival claim operates under the legal fiction that the decedent did not die and, therefore, Ed may assume Richard's minority status for the time between Richard's death and the day he would have turned 18 had he lived. In *Payne,* the district court denied a motion to exclude expert testimony regarding economic consumption as it pertained to a survival action, and the plaintiff—who had brought both survival and wrongful death claims—petitioned for a writ of supervisory control. *Payne,* ¶¶ 3-4. Accepting supervisory control, we determined that economic consumption factors into lost earnings computations in wrongful death actions, but not in survival actions. *Payne,* ¶¶ 5-12. Noting the 1987 Legislature amended § 27-1-501, MCA, to require wrongful death and survival actions to be combined in one action and to prohibit double recovery, we stated that "[w]hile the 1987 amendment did change the procedure one must follow in bringing the actions, the amendment did not change the respective substantive law in the area." *Payne,* ¶¶ 13-14.

¶24    *Payne,* ¶ 14, distinguishes laws pertaining to the procedure for bringing an action from substantive laws applicable to the elements of a claim. While *Payne,* ¶ 7, states that an estate's "right of recovery is identical to the decedent's had he or she lived[,]" the time period in which the estate's personal representative may bring a survival action is a procedural question separate from the substantive elements of the claim, such as the damages at issue in *Payne.* Thus, *Payne* does not support Ed's position.

¶25    Finally, we note the assertion in Ed's reply brief that, if his arguments regarding minority tolling are unsuccessful, any new principle of law should not apply retroactively

8

under *Ereth v. Cascade County*, 2003 MT 328, ¶¶ 26-32, 318 Mont. 355, ¶¶ 26-32, 81 P.3d 463, ¶¶ 26-32. Having analyzed this issue based on statutory plain language and prior Montana cases, we conclude this Opinion does not set forth a new principle of law. Thus, *Ereth* has no application here.

¶26 We hold the District Court correctly concluded minority tolling does not apply to the survival claim against Dr. Allen.

¶27 **2. Did the District Court err in concluding that minority tolling under § 27-2-401(1), MCA, does not apply to the limitations period for the wrongful death claim?**

¶28 Ed argues that, because § 27-1-501(2), MCA, requires a survival claim and a wrongful death claim to be joined in a single proceeding, the limitations period for the wrongful death claim is tolled along with—or, in other words, "piggy backs" onto—the period for the survival claim. Having determined minority tolling does not apply to Ed's survival claim, we conclude it also does not apply to the joined wrongful death claim.

¶29 We hold the District Court correctly concluded minority tolling does not apply to the wrongful death claim against Dr. Allen.

¶30 **3. Did the District Court err in concluding that the "discovery" provision of § 27-2-205(1), MCA, does not delay the running of the limitations period?**

¶31 As set forth above, § 27-2-205(1), MCA, states in part that medical malpractice actions generally must be commenced within 3 years after the injury or "within 3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs last[.]" The District Court relied on *Major v. North Valley Hosp.*, 233 Mont. 25, 759 P.2d 153 (1988), *overruled in part by Blackburn v. Blue Mountain*

9

*Women's Clinic*, 286 Mont. 60, 75, 951 P.2d 1, 10 (1997), in determining "discovery" occurred—and, consequently, triggered the running of the 3-year limitations period in § 27-2-205(1), MCA—either at the time Richard died in August of 2000 or no later than when Ed obtained the medical records. Under this conclusion, Ed's MMLP proceeding in July of 2004 was nearly a year too late.

¶32 In *Major*, a plaintiff brought a medical malpractice action regarding her daughter's death, and the district court granted summary judgment to the defendants on statute of limitations grounds. *Major*, 233 Mont. at 27, 759 P.2d at 154-55. On appeal, the plaintiff argued the "discovery" provision of § 27-2-205(1), MCA, delayed the running of the statute of limitations until she discovered facts providing a causal connection between the defendants' acts, errors or omissions and her daughter's death. We noted the "farthest reaches" of prior case law provided that discovery may occur as late as the date the plaintiff discovers an injury may have been caused by the defendant. *Major*, 233 Mont. at 29-30, 759 P.2d at 156. The plaintiff's deposition testimony reflected, however, her beliefs on the day her daughter died that the treatment was inadequate and the events of the day were a "nightmare." We concluded, on the record before us, that the plaintiff's alleged lack of knowledge of the facts connecting the defendants' acts to her daughter's death—that is, the causal connection—did not prevent her from discovering the injury. *Major*, 233 Mont. at 30, 759 P.2d at 156-57.

¶33 Here, Ed confronted Dr. Allen on the day Richard died, stating "I guess you put off fixing his leg long enough, now you don't have to do it[.]" He also stated that, shortly after

10

Richard's death, he contemplated a lawsuit "if there was something wrong," and suspected at that time that something had gone wrong because "[t]oday's time, you know, people don't usually die from a broken leg[.]" We conclude that, as in *Major*, the record here reflects a parent's suspicion of malpractice shortly after his child died.

¶34 Ed does not challenge the reasoning in *Major*, but asserts *Major* is distinguishable because the facts there established obvious injury caused by obvious negligence, while the present case involves a death resulting from hidden injuries with unknown causes. Ed does not dispute that the autopsy report—which he obtained within weeks after Richard's death— stated the cause of death was "[m]ultifactorial: Fat embolism syndrome, aspiration pneumonia, and multisystem failure." Rather, he asserts that, due to his lack of medical training and inability to understand the conditions allegedly leading to his son's death, "discovery" under § 27-2-205(1), MCA, did not occur until he read the Great Falls Tribune article in February of 2004. In this regard, Ed analogizes to *Wisher v. Higgs*, 257 Mont. 132, 849 P.2d 152 (1993), *overruled in part by Blackburn*, 286 Mont. at 75, 951 P.2d at 10.

¶35 In *Wisher*, the plaintiff sued her surgeon for malpractice, alleging she sustained an injury during a surgery that occurred several years earlier. In the years between the surgery and the filing of her claim, the plaintiff allegedly had symptoms unrelated to the injury sustained during surgery; consulted several professionals and specialists; was repeatedly misdiagnosed; had a two-year period of improvement; and ultimately obtained a medical opinion that she sustained an injury during the surgery. *Wisher*, 257 Mont. at 135-38, 849 P.2d at 153-55. After trial, a jury found the plaintiff, through reasonable diligence, should

11

have discovered her injury and that it may have been caused by the surgery more than three years before she filed her claim; in other words, the jury effectively decided the claim was time-barred. *See Wisher*, 257 Mont. at 134, 849 P.2d at 153. We reversed, reasoning that although the plaintiff perceived her symptoms on the day of her surgery, the nature of the injury was self-concealing and the evidence did not support a determination that she knew or through reasonable diligence could have known the symptoms she experienced were causally connected to the surgeon's negligence. *Wisher*, 257 Mont. at 140-44, 849 P.2d at 156-59.

¶36 The record here is not as extensive as that in *Wisher*, in part because Ed asserted attorney-client privilege and declined to answer certain deposition questions. In addition to matters set forth above including consultations with attorneys and the like, however, Ed's deposition testimony reflects that: (1) after Richard's death, he did not discuss Richard's care with Benefis employees, because he "didn't want anything to do with the hospital at that point"; (2) he discussed Richard's medical records with a general practitioner who was "not a surgeon" and "didn't say one thing one way or the other"; (3) he spoke with a friend who worked at the hospital in a non-surgical position and had worked in the morgue, who "would have no way of knowing" whether an error occurred; and (4) he did not discuss the autopsy report with anyone other than Nancy, the general practitioner and the hospital worker and, while he did not understand the report, he "thought if there was something major in it, it would have popped out[.]" In light of this testimony, the undisputed facts here are distinguishable from those in *Wisher*.

¶37 Moreover, unlike the expert opinion in *Wisher* that the plaintiff sustained an injury

during her surgery, Ed points to nothing in the 2004 Great Falls Tribune article providing different information about the cause of Richard's injuries than the autopsy report and medical records in Ed's possession since 2000. Indeed, most of the article focused on Dr. Allen's treatment of a patient in 2003, and its only mention of the cause of Richard's death was its reference to a fat embolism—one of the causes listed in the autopsy report—without any statement regarding the cause of the embolism. Ed appears to argue that he discovered Dr. Allen's care was substandard upon reading the report on regulatory proceedings; however, as already discussed, his deposition testimony reflects he suspected malpractice on the day Richard died. In any event, the newspaper article provides no more information about the injury at issue or the cause of that injury than the information in Ed's possession. Thus, we conclude Ed's analogy to *Wisher* is misplaced.

¶38    Alternatively, Ed asserts—in one paragraph of his opening brief and a short follow-up in his reply brief—that, since he is a lay person and the medical issues are complex, the date of his "discovery" is a vigorously contested factual issue. In the District Court, Ed did not assert any disputed facts in his summary judgment brief and, at oral argument on the motion, his counsel merely stated that "[m]any of these questions, fraudulent concealment, simple concealment, duty of discovery, duty of inquiry are fact ladening [sic] questions. They're not amenable to summary adjudication." Perhaps in light of this vague argument, the District Court characterized the facts as undisputed.

¶39    On appeal, as in the District Court, Ed's "disputed facts" arguments do not advance any allegedly conflicting evidence regarding discovery which raises an issue of fact. It is not

13

this Court's obligation to develop arguments on a party's behalf. *See In re Marriage of McMichael*, 2006 MT 237, ¶ 12, 333 Mont. 517, ¶ 12, 143 P.3d 439, ¶ 12 (citation omitted). We note Ed's recitation of the background of the case includes an excerpt from his deposition in which he stated he first thought something had gone wrong when he read the Great Falls Tribune article. Were we to consider this deposition testimony in conjunction with his "disputed facts" argument—despite Ed's failure to request that we do so—the testimony amounts to a mere denial that he suspected malpractice before reading the news article. Given Ed's other deposition testimony and evidence of record, mere denial is insufficient to raise a genuine issue of material fact. *See e.g. Ponderosa Pines Ranch, Inc. v. Hevner*, 2002 MT 184, ¶ 24, 311 Mont. 82, ¶ 24, 53 P.3d 381, ¶ 24 (citation omitted). We decline to address Ed's "disputed facts" assertions further.

¶40    We hold the District Court correctly concluded the "discovery" provision of § 27-2-205(1), MCA, does not delay the running of the 3-year limitations period and, therefore, Ed's claims are time-barred.

¶41    **4. Does the "failure to disclose" provision of § 27-2-205(1), MCA, apply to the 3-year limitations period?**

¶42    As noted above, § 27-2-205(1), MCA, sets forth a 3-year statute of limitations, which may be delayed pursuant to the "discovery" provision,

> but in no case may an action be commenced after 5 years from the date of injury. However, this time limitation is tolled for any period during which there has been a failure to disclose any act, error, or omission upon which an action is based and that is known to the defendant or through the use of reasonable diligence subsequent to the act, error, or omission would have been known to the defendant.

14

In the alternative to his assertions regarding minority tolling and the discovery provision, Ed argues the foregoing "failure to disclose" provision of § 27-2-205(1), MCA, applies to the 3-year statute of limitations. He asserts we wrongly concluded in *Blackburn* that—based on the plain language of the statute—the "failure to disclose" provision applies exclusively to the 5-year statute of repose. We disagree but, before proceeding further, we reiterate that Ed filed his MMLP claim approximately 4 years after the date of Richard's death; thus, the 5-year statute of repose is not at issue here and the "failure to disclose" provision is pertinent only if it applies to the 3-year limitations period.

¶43 Ed asserts *Blackburn* is wrong because, if a medical malpractice action is barred by the 3-year statute of limitations, applying the "failure to disclose" provision to the 5-year statute of repose would accomplish nothing. He is incorrect, primarily because he fails to acknowledge the interplay between the delay of the running of the 3-year limitations period pursuant to the "discovery" provision and the tolling of the 5-year statute of repose under the "failure to disclose" provision. In other words, a claim filed more than 5 years after injury may be timely if the plaintiff could not through reasonable diligence have earlier discovered the injury and its cause *and* the defendant failed to disclose an act, error or omission upon which the action is based. We reject Ed's assertion that applying the "failure to disclose" provision solely to the 5-year statute of repose accomplishes nothing.

¶44 We also reject Ed's argument that applying the "failure to disclose" provision only to the 5-year statute of repose would negate what he characterizes as the "central policy" of *Blackburn*, which he describes as disallowing immunity for concealment. *Blackburn*

15

involved a plain language statutory interpretation of the "failure to disclose" provision. It was not premised on a policy determination by this Court, but was a straightforward interpretation of the policy reflected in the Legislature's statutory language.

¶45   Finally, Ed asserts we were careful in *Blackburn* to overrule prior cases only insofar as they applied the *statutory* "failure to disclose" language to the 3-year statute of limitations. From that premise, Ed posits that the common law remains viable insofar as pre-*Blackburn* cases addressed a health care provider's failure to disclose or concealment in relation to the 3-year limitations period. We disagree.

¶46   In *Blackburn*, we began our discussion of the time limitations associated with medical malpractice actions by recognizing that the limitations period for medical negligence claims is "codified" at § 27-2-205, MCA. *Blackburn*, 286 Mont. at 71, 951 P.2d at 7. Given that recognition, our use of "statutory" language is not surprising. Moreover, nothing in our overruling of prior cases in *Blackburn* leaves open the possibility that common law may provide an independent basis for extending or delaying the time limitations in the Legislature's statute. For that reason, and because the "failure to disclose" provision applies exclusively to the 5-year statute of repose which is not at issue, we need not address Ed's assertion that a "failure to disclose" occurred in this case.

¶47   We hold the "failure to disclose" provision of § 27-2-205(1), MCA, does not apply to the 3-year limitations period.

¶48   Affirmed.

/S/ KARLA M. GRAY

16

We concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice W. William Leaphart, dissenting in part and concurring in part.

¶49    I dissent as to Issue 1 and concur as to Issues 2, 3, and 4.

¶50    The plain meaning of the phrase "time of the disability" reasonably could be interpreted to encompass the time between when a minor dies and when the minor would have reached the age of majority. The phrase also reasonably could be interpreted to include only the time that the minor remains alive. I conclude that the phrase "time of the disability" is ambiguous regarding the effect of a minor's death. We must look beyond the plain language of the statute, therefore, to ascertain the Legislature's intent. *Mont. for Justice v. State ex rel. McGrath*, 2006 MT 277, ¶ 60, 334 Mont. 237, ¶ 60, 146 P.3d 759, ¶ 60.

¶51    We must determine the Legislature's intent with respect to the "time of the disability" as contained in § 27-2-401(1), MCA. The Runstroms argue that the structure of §§ 27-2-205 and 27-2-401, MCA, supports their interpretation of the phrase "time of the disability." The Runstroms correctly point out that this Court previously has interpreted ambiguous language in a statute based on the statutory structure in which the language operates. *See e.g.*, *Strzelczyk v. Jett*, 264 Mont. 153, 157, 870 P.2d 730, 732-33 (1994).

¶52    Sections 27-2-205 and 27-2-401, MCA, operate together to provide the statute of limitations on medical malpractice claims brought on behalf of minors. Section 27-2-205(1), MCA, provides that a plaintiff must file a medical malpractice claim within three years of the

17

date of the injury or within three years after the plaintiff reasonably should have discovered the injury. Before 1987, § 27-2-401, MCA, tolled this three-year statute of limitations for any minor until that minor reached the age of majority. *Estate of McCarthy v. Second Judicial Dist.*, 1999 MT 309, ¶ 9, 297 Mont. 212, ¶ 9, 994 P.2d 1090, ¶ 9.

¶53 The Legislature in 1987 limited minority tolling for minors injured while under the age of four, however, when it added subsection (2) to § 27-2-205, MCA. *Estate of McCarthy*, ¶ 10. Section 27-2-205(2), MCA, provides that "in an action for death or injury of a minor who was under the age of 4 on the date of the minor's injury, the period of limitations in subsection (1) begins to run when the minor reaches the minor's eighth birthday *or dies*, whichever occurs first . . . ." (Emphasis added.) The Legislature intended § 27-2-205(2), MCA, to limit the minority tolling provision in § 27-2-401(1), MCA, in order to "address concerns regarding escalating medical malpractice insurance premiums and corresponding increases in the cost of medical care." *Estate of McCarthy*, ¶ 17.

¶54 The Runstroms argue that we must interpret the malpractice statutes in a manner that gives effect to all provisions. In particular, they cite to the requirement in § 1-2-101, MCA, that when a statutory scheme has several provisions, a construction is to be adopted which will, if possible, give effect to all. The Runstroms point to the fact that the Legislature included the "or dies" provision in § 27-2-205(2), MCA, when it amended the statute in 1987.

¶55 The "or dies" provision represents one contingency that triggers the running of the period of limitation for a minor injured while under the age of four. Section 27-2-205(2),

18

MCA. The minor's eighth birthday represents the other possible trigger. Section 27-2-205(2), MCA. The Runstroms contend that the Legislature's inclusion of the "or dies" provision in subsection (2) would have been unnecessary if the "time of the disability" in § 27-2-401(1), MCA, automatically ended upon the death of a minor. They argue that this interpretation of "time of the disability" would render superfluous the phrase "or dies" in § 27-2-205(2), MCA.

¶56 Dr. Allen contends that the Runstroms "ignore[] critical differences in how [§§ 27-2-205(2), and 27-2-401(1), MCA] work." He explains that § 27-2-205(2), MCA, by its plain language, tolls the statute of limitations until "a fixed date (the child's eighth birthday) on which tolling will end." He asserts that the plain language of § 27-2-205(2), MCA, would toll the statute of limitations until the "fixed date" at which the child would have turned eight absent language to the contrary. He suggests that the Legislature included the "or dies" provision in order to prevent the statute from continuing to toll until the "fixed date" when the minor would have turned eight.

¶57 Dr. Allen contends that § 27-2-401(1), MCA, to the contrary, provides for tolling "only 'until the plaintiff is no longer disabled.'" He argues that the plain language of § 27-2-401(1), MCA, would not toll the statute of limitations after the child's death in light of the fact that the phrase "time of the disability" ends upon a minor's death by its plain language. Thus, he contends that the Legislature had no reason to include a similar "or dies" provision in § 27-2-401(1), MCA.

19

¶58 Dr. Allen's proposed interpretation of the two statutes contradicts itself. He argues on the one hand that "time of the disability" in § 27-2-401(1), MCA, cannot continue after death. He argues, on the other hand, that "the minor's eighth birthday" in § 27-2-205(2), MCA, can occur after death. Dr. Allen attempts to explain away this contradiction by focusing on the fact that a "minor's eighth birthday" represents a fixed date, while "time of the disability" does not represent a fixed date. His distinction fails. The date at which the disability of minority normally ends—i.e. 18—and the date at which a minor will reach the age of eight, equally will be fixed for any particular child regardless of the fact that the Legislature expresses one age as a number and another age as a legal status.

¶59 I conclude that the structure of the applicable statute of limitations indicates that the phrase "time of the disability" encompasses the time between the death of a minor and when that minor would have reached the age of majority. The Legislature limited the minority tolling provision so that it would end the "time of the disability" when a minor injured while under the age of four reaches the age of eight, *or dies*. The Legislature would have had no reason to specify in § 27-2-205(2), MCA, that tolling would end upon the death of the minor, had the phrase "time of the disability," in § 27-2-401(1), MCA, already ended upon the death of the minor pursuant to its plain language.

¶60 Dr. Allen argues that this interpretation conflicts with other courts' interpretations of analogous statutes. He points specifically to *Holt v. Lenko*, 791 A.2d 1212 (Pa. Super. 2002), where a mother argued that Pennsylvania's minority tolling statute tolled the statute of limitations on her survival action until two years after her son would have turned 18.

20

*Holt*, ¶ 7. The statute at issue provided that if the "individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced." *Holt*, ¶ 7. The Pennsylvania court concluded that this language did not toll the statute of limitations beyond the death of the minor. *Holt*, ¶ 10. The court reasoned that "[t]here is nothing in the statutory language that would indicate that the legislature intended that the minority tolling statute would be available to a deceased minor plaintiff." *Holt*, ¶ 10.

¶61 Dr. Allen fails to note, however, that § 27-2-205(2), MCA, unlike the statute in *Holt*, indicates that the Montana Legislature intended that our minority tolling statute would be available to a deceased minor. The "or dies" provision specifies that death ends minority tolling for a specific subclass of minors. This interpretation gives effect to this provision, while Dr. Allen's interpretation would render it superfluous. Dr. Allen fails to draw our attention to any other court that has reconciled similar provisions in a contrary manner. I conclude that the minority tolling statute at § 27-2-401(1), MCA, tolls the three-year statute of limitation on the Runstroms' survival claim until the date at which Richard would have reached the age of majority.

¶62 I concur with the result on Issue 2, but for different reasons. We interpret statutes of limitations according to their plain language. *Wing v. State ex. rel. Dept. of Transp.*, 2007 MT 72, ¶ 13, 336 Mont. 423, ¶ 13, 155 P.3d 1224, ¶ 13. The plain language of § 27-2-401(1), MCA, tolls the statute of limitations only for a minor who seeks to file a claim as "a person entitled to bring an action . . . at the time the cause of action accrues . . . ." The

21

Runstroms are the party entitled to bring a wrongful death claim. The Runstroms do not allege that they were minors at the time their action for wrongful death accrued. Section 27-2-401(1), MCA, provides the Runstroms with no relief from the three-year statute of limitations in § 27-2-205(1), MCA. I conclude that the District Court correctly determined that § 27-2-401(1), MCA, does not toll the three-year statute of limitations in § 27-2-205(1), MCA, on the Runstroms' wrongful death claim.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson joins in the dissent and concurrence of Justice Leaphart.

/S/ JAMES C. NELSON